Robert M. Manley (*pro hac vice*)
Travis E. DeArman (*pro hac vice*)
Patrick Pijls (*pro hac vice*)
**MCKOOL SMITH, PC**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel: (214) 978-4000
Fax: (214) 978-4044
rmanley@mckoolsmith.com
tdearman@mckoolsmith.com
ppijls@mckoolsmith.com

J Christopher Jorgensen (Bar No. 5382)
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV  89169
Tel: (702) 949-8200
cjorgensen@lewisrcoa.com

*Attorneys for Plaintiff Internet Sports International, Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Internet Sports International, Ltd.,<br><br>    Plaintiff,<br><br><br>v.<br><br>Amelco USA, LLC. et al.,<br><br>    Defendants. | Case No.: 2:23-cv-00893-ART-NJK<br><br>**PLAINTIFF ISI'S FIRST MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS** |

Plaintiff Internet Sports International, Ltd. ("ISI") requests, pursuant to Federal Rules of Civil Procedure 26. 34 and 37, this Court enter an order compelling Defendants Amelco USA, LLC (AUSA) and Amelco UK, Ltd. (AUK) (collectively "Amelco" or "Defendants") to produce documents, and to award ISI its reasonable fees and costs in bringing this motion.

Pursuant to Local Rule 26-6, counsel for ISI conducted three telephonic conferences from December 11, 2023 through January 22, 2024, in an effort to resolve or at least narrow the parties'

disputes.[1] Most recently, on Monday January 22, the parties' counsel met and conferred on case status, including discovery. ISI's counsel asked Defendants' counsel to confirm whether Defendants would produce the documents subject to this motion, on or before January 25.[2] That date has come and gone; Defendants counsel have not responded; and <u>Defendants have produced no documents in response to ISI's requests</u>

## I.   INTRODUCTION AND SUMMARY.

ISI's claims arise out of a former business relationship between ISI and Defendants. As part of that business relationship, ISI helped Defendants to develop hardware and software for use in U.S. retail sports-betting.[3] The parties worked together for approximately two years, from 2019 through 2021. In 2021, however, Defendants terminated their relationship with ISI; took the hardware and software developed using ISI's assistance, confidential information, and intellectual property; sold that hardware and software to U.S. customers; and failed to compensate ISI.[4]

ISI therefore sued Defendants for breach of contract (including nondisclosure agreements ("NDAs") between the parties), fraud, and misappropriation of trade secrets in violation of the DTSA[5] and the Nevada UTSA[6] (among other causes of action).[7]   ISI served requests for production ("RFPs") on October 20, 2023 seeking evidence relevant to these claims. In response, Defendants served meritless, boilerplate objections.

ISI has tried to avoid or narrow the parties' disputes. For the purposes of this motion, ISI seeks an Order compelling production of (i) contracts among Amelco and its U.S. customers for retail sports-betting products, along with documents sufficient to show Amelco's U.S. sales; and

---

[1] Declaration of T. DeArman at ¶¶ 4-8.

[2] *See generally* Ex. 9 (Jan. 22, 2024 email from T. DeArman to J. Tennert).

[3] *See* ECF No. 70 at ¶¶ 41-49 (ISI's Second Amended Complaint).

[4] *Id.* at ¶¶ 50-95.

[5] U.S.C. § 1836, *et seq*.

[6] NRS § 600A.040(1), *et seq*.

[7] *See* ECF. No. 70 at ¶¶ 96-221 (stating ISI's causes of action).

(ii) documents responsive to narrow search parameters concerning Amelco and ISI's business relationship.

The document requests and Defendants' responses are found below on pages 7-10 and 14-18. The requested documents are critical to ISI's claims. Amelco could have produced them with minimal effort. Instead, Amelco chose stand on meritless objections. ISI therefore asks the Court to compel production and assess reasonable expenses and fees against Amelco.

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Following a motion for leave, to which Defendants failed to respond, ISI filed its operative pleading on November 24, 2023.[8]

### A.    The parties.

ISI is a Las Vegas based pioneer in retail sports-betting solutions.[9] ISI offers turnkey, retail race and sports-betting solutions.[10]

Defendants have long offered mobile and online sports-betting solutions, primarily in Europe.[11] Until their dealings with ISI, however, Defendants had no retail solution that could be deployed in the U.S.[12]

### B.    The Parties' relationship and Amelco's extraction of ISI's assistance and intellectual property.

To facilitate its expansion into the U.S., Amelco entered into a business arrangement with ISI.[13] In furtherance of this relationship, the parties executed a number of contracts, including an

---

[8] ECF Nos. 69 (Order); 70 (Second Amended Complaint).

[9] "Retail solutions" means solutions one would find in a casino, sports arena, or other physical location, as contrasted with mobile or online solutions.

[10] ECF No. 70 at ¶¶ 2-5.

[11] ECF No. 70 at ¶ 3.

[12] ECF No. 70 at ¶¶ 2-5.

[13] ECF No. 70 at ¶¶ 41-79.

NDA executed March 12, 2019 (the "2019 NDA) and Mutual Confidentiality Agreement dated September 13, 2019 (the "2019 MCA").[14]

Under these agreements, the parties pursued what they called the "Kiosk Project" or "SSBT[15] Project."[16] As part of this project, ISI assisted Defendants with the development of a proprietary Amelco kiosk system (hardware and software) that Defendants would sell directly to their U.S. customers. [17] In exchange for ISI's assistance with this development, Amelco agreed to compensate ISI through a success-based fee: (i) $1,000 per kiosk sold and (ii) $100 per kiosk per month for the kiosk's service life. The parties memorialized this agreement in another contract, the Kiosk Agreement.[18] But Amelco never signed the Kiosk Agreement, instead drawing out negotiations for years, while continuing to extract assistance, information, and intellectual property from ISI. [19]

For example:

- ISI shipped two of ISI's fully functional kiosks to Amelco in the United Kingdom, thereby allowing Amelco engineers full access to ISI's hardware configurations and software suite, so that Amelco could replicate the functionality of ISI's kiosk. The whereabouts and status of these kiosks remains unknown, as Amelco has refused to answer discovery concerning them.[20]

- ISI provided dedicated support from several of ISI's employees, serviced thousands of Amelco's support tickets, and disclosed to Amelco ISI's entire proprietary and confidential playbook for creating and maintaining retail sports-betting hardware

---

[14] ECF No. 70 at ¶¶ 41-42, 52-53.

[15] Sports Service Betting Terminal.

[16] ECF No. 70 at ¶¶ 49-79.

[17] ECF No. 70 at ¶¶ 49-79.

[18] ECF No. 70 at ¶ 71.

[19] ECF No. 70 at ¶75-95.

[20] ECF No. 70 at ¶ 6. The Parties negotiations on these issues are ongoing.

and software. ISI estimates that it devoted more than two-thousand man-hours to helping Amelco develop a viable retail solution.[21]

Once Defendants extracted ISI's knowledge and intellectual property, they severed ties with ISI. Defendants then proceeded to sell the products that Defendants developed using ISI's assistance and intellectual property.[22] ISI filed suit to recover for Defendants' misconduct.

**C.    History of the parties' negotiations over discovery.**

On October 20, 2023, ISI served RFPs and interrogatories on each Defendant. Defendants' deadline to respond was November 20, 2023. In the days before this deadline, Defendants requested an extension. As a courtesy, ISI agreed to extend Defendants deadline until December 4, 2023, with two conditions. As ISI's counsel stated:

> We agree to a two-week extension, or until December 4, with the following caveats:
>
> 1)      Amelco at least begin its document production at the same time it responds. I understand and expect that document production will be a rolling process, but certainly there are some documents that can be produced immediately.
>
> 2)      Amelco serves interrogatory responses that are something more than just "Amelco objects and refuses to answer.[23]

Defendants accepted these conditions, but violated the parties' agreement. Specifically, Defendants served responses consisting almost entirely of meritless, boilerplate objections.

Despite this violation, ISI tried to negotiate a resolution. ISI responded to Defendants' objections with 30 minutes, and then conducted three telephonic conferences and sent numerous emails from December 11, 2023 through January 22, 2024, in an effort to resolve or at least narrow the parties' disputes.[24] These efforts included ISI providing, at Defendants' request, various search

---

[21] ECF No. 70 at ¶¶ 54-62.

[22] ECF No. 70 at ¶¶ 80-95.

[23] Ex. 10 (Nov. 17, 2023 email exchange between T. DeArman to W. Beavers).

[24] Declaration of T. DeArman at ¶¶ 4-8.

parameters. *See infra* Part IV.B. <u>To this day, however, Defendants have produced no documents in response to ISI's requests.</u>

ISI is still trying to negotiate with Defendants. But the parties have reached impasse on the issues raised below.[25]

## III.    LEGAL STANDARD.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The Federal Rules of Civil Procedure contemplate full and equal discovery so as to prevent surprise, prejudice, and perjury during trial. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) (internal citations omitted). "Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope." *Sci. Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2017 U.S. Dist. LEXIS 109488 (D. Nev. July 13, 2017) (internal citations omitted).

The movant bears the initial burden of presenting a well-reasoned motion supported by case law. *See*, e.g., *Tasty One, LLC v. Earth Smarte Water, LLC*, No. 2:20-cv-01625-APG-NJK, 2021 U.S. Dist. LEXIS 258596 (D. Nev. Aug. 2, 2021) (internal citation omitted). "However, the party resisting discovery bears the burden of showing why the discovery should be denied," and "[t]o meet this burden, the party resisting discovery must specifically detail the reasons for why each request is objectionable; the party may not rely on boilerplate, generalized, conclusory, or speculative arguments." *Id.* (citations omitted).

Federal Rule of Civil Procedure 37 calls for the assessment of reasonable expenses and attorneys' fees against a party that necessitates the need for a motion to compel, unless the court finds that "(i) the movant filed the motion before attempting in good faith to obtain the disclosure

---

[25] Declaration of T. DeArman at ¶¶ 4-8.

or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

## IV.   ARGUMENT AND AUTHORITY

### A.   The Court should compel Defendants to produce their contracts with U.S. customers and documents sufficient to show Defendants' U.S. sales of retail sports-betting hardware and software.

For purposes of this motion, ISI requests that the Court compel Amelco to produce its contracts with U.S. customers and other documents sufficient to show Amelco's sale or license of retail sports-betting products to those customers (in the U.S.), from January 1 2019 through the present. These documents are responsive numerous of ISI's RFPs, including No. 29.[26]

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to show every sale or license of Amelco software or hardware related to a retail gambling or gaming solution within United States, from January 1, 2019 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

AUSA objects to this request as follows:

1. AUSA objects to this request on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an essentially limitless category of documents relating in any way to gaming technology and/or AUSA's business affairs, which documents might reasonably include records regarding independently-developed proprietary technology, business plans and financial data, and third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would substantially outweigh any likely benefit for the litigation of material issues in this case. ISI has no colorable claim to any interest in or profits of any of AUSA's technology or business dealings with third parties, and therefore the facts and circumstances of the same are utterly irrelevant.

2. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "sufficient to show every sale or license of Amelco software or hardware related to a retail gambling or gaming solution," which is susceptible to multiple

---

[26] Ex. 2 (Amelco US, LLC's responses); Ex. 3 (Amelco UK, Ltd.'s responses). ISI propounded requests to production to both Defendants. Both have asserted the same objections. Unless otherwise noted, ISI will refer to Defendant Amelco US, LLC's responses as representative of Defendants' position.

interpretations and which renders this request overbroad, unduly burdensome, and unintelligible as drafted.

3. AUSA objects to this request as vague and ambiguous to the extent it relies on the defined term "Amelco," which is susceptible to multiple interpretations and which renders this request unintelligible and/or overbroad. AUSA responds to this request on its own behalf based on information within its possession, custody, and control under FRCP 34, and does not purport to respond on behalf of any other party or non-party to this litigation.

4. AUSA objects to this request as vague, overbroad, and unduly burdensome in that it purports to compel production of a broad category of documents, irrespective of relevance to the claims in this matter.

5. AUSA objects to this request as seeking material falling outside the scope of discovery under FRCP 26(b).

6. AUSA objects to this request on grounds that it appears to seek documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

7. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.[27]

Based on the foregoing specific and general objections, AUSA has no obligation to respond to this request.

The documents are further responsive to ISI's RFP No. 36, requesting production of similar documents, for the Hard Rock Casino, an Amelco customer that ISI identified through public sources.[28] RFP No. 36, and Amelco's response, is copied below as required by the Local Rules:

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to show all marketing, sales, or licensing of hardware or software by Amelco to Hard Rock and/or the Seminole Tribe.

---

[27] Ex. 2 at 35-36 (Amelco USA). FRP 29 to Amelco UK, Ltd. is identical, as is Amelco UK's response and objections—with one exception: Amelco UK does not assert an "assumes and/or mischaracterizes facts" objection. Ex. 3 at 34-35. As discussed, that objection is not a cognizable objection to a discovery request. *See infra* p. 11.

[28] RFPs 36-38 request in formation specific to the Hard Rock; ISI's RFP No. 33-35 request identical information for another publicly identified Amelco customer, Fanatics. Amelco's objections are the same. *E.g.* Ex. 2 at 41-45 (Fanatics); 45-50 (Hard Rock).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

AUSA objects to this request as follows:

1. AUSA objects to this request on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an essentially limitless category of documents relating in any way to gaming technology and/or AUSA's business affairs, which documents might reasonably include records regarding independently-developed proprietary technology, business plans and financial data, and third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would substantially outweigh any likely benefit for the litigation of material issues in this case. ISI has no colorable claim to any interest in or profits of any of AUSA's technology or business dealings with third parties, and therefore the facts and circumstances of the same are utterly irrelevant.

2. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "sufficient to show all marketing, sales, or licensing of hardware or software by Amelco to Hard Rock and/or the Seminole Tribe," which is susceptible to multiple interpretations and which renders this request overbroad, unduly burdensome, and unintelligible as drafted.

3. AUSA objects to this request on grounds that it assumes and/or mischaracterizes facts.

4. AUSA objects to this request as vague and ambiguous to the extent it relies on the defined term "Amelco," which is susceptible to multiple interpretations and which renders this request unintelligible and/or overbroad. AUSA responds to this request on its own behalf based on information within its possession, custody, and control under FRCP 34, and does not purport to respond on behalf of any other party or non-party to this litigation.

5. AUSA objects to this request as vague, overbroad, and unduly burdensome in that it purports to compel production of a broad category of documents, irrespective of time period or relevance to the claims in this matter.

6. AUSA objects to this request as seeking material falling outside the scope of discovery under FRCP 26(b).

7. AUSA objects to this request on grounds that it appears to seek documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

8. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

1
2

Based on the foregoing specific and general objections, AUSA has no obligation to respond to this request.

3
4
5
6
7
8
9
10
11
12

Plaintiffs' claims are based in Defendants' U.S. sales of retail sports-betting hardware and software.  Hardware and software that ISI alleges Defendants developed using ISI's assistance, know-how, show-how, confidential information, and trade secrets. Information concerning Defendants' sales will be fundamental to establishing Defendants' use of Amelco's use of ISI's assistance, confidential information, and trade secrets, as well as the damages that flow from Amelco's misconduct. For example, Defendants' marketing material will demonstrate the features or aspects of its products that Defendants identified as setting their products apart—features and aspects that ISI helped Defendants to develop. In a second example, production of contracts and sales data will allow ISI to present its damages calculations, including damages for disgorgement of Defendants' ill-gotten gains.

13
14
15
16
17
18

Defendants offer nothing but meritless boilerplate in opposition to ISI's requests. As shown above, Defendants copy-and-and paste the same rote objections to each RFP (occasionally varying the order or introducing an additional objection). The Court has long held that Defendants may "not rely on boilerplate, generalized, conclusory, or speculative arguments." *See*, *e.g.*, *Martinez v. James River Ins. Co.*, No. 2:19-cv-01646-RFB-NJK, 2020 U.S. Dist. LEXIS 72911 (D. Nev. Apr. 24, 2020). Moreover, each of Defendants' *eight* objections is without merit.

19
20
21
22
23
24
25
26
27

First, Defendants object that the requests "appear[] to be propounded for no purpose other than to burden, harass, and annoy AUSA, [and] its business partners" before going on to mischaracterize the scope of the requests. This is meritless: The requests at issue specifically limit the scope of the requests to "documents sufficient to show" Amelco's U.S. marketing and sale of the products that constitute Defendants' violation of its contractual obligations and misappropriation of ISI's intellectual property. The requests are further limited to the time-period during and after the parties' business relationship (during which Defendants extracted ISI's assistance, confidential information, and intellectual property, and then sold products based on that misappropriation). Defendants then end their objection with the argument that ISI has "no

28

colorable claim to any interest in or profits of any of AUSA's technology." In other words, Defendants claim, "We didn't do it." This is not novel, and the fact that a Defendant denies liability is not a basis to resist discovery. Additionally, to the extent Defendants argue that disgorgement of ill-gotten profit is not recoverable, they are wrong as a matter of law. For example, misappropriation law specifically permits disgorgement. *See*, *e.g.*, 18 U.S.C. § 1836(b)(3)(B); *see also* Commentary on Monetary Remedies in Trade Secret Litigation, Sedona Conference publication, October 31, 2022. Available at: https://thesedonaconference.org.

Second, AUSA objects to the phrase "sufficient to show…[the substance of the request]" as "vague and ambiguous," "susceptible to multiple interpretations" and "overbroad, unduly burdensome, and unintelligible as drafted." Not so. The phrase "documents sufficient to show" is a term that **limits** discovery, and indeed, some courts refuse to impose such restriction. *See, e.g.*, *In re Stubhub Refund Litig.*, No. 20MD02951HSGTSH, 2022 WL 1640304, at *2 (N.D. Cal. May 24, 2022) ("The Court has considered whether this RFP can be limited to documents 'sufficient to show' but thinks that limitation is not viable."). ISI thus made every attempt to be reasonable. Moreover, these requests at issue seek a narrow, discrete subset of information: they could be satisfied by producing:

1) The contract with the customer(s) at issue;

2) Data showing the volume of sales under that contract (if not contained in the contract itself), and breaking down the types of items sold (if applicable); and

3) The marketing documents delivered to the customer (with the relevant transmission email or other communication).

Third, Defendants object to RFP 36 (but not 29) because it "assumes and/or mischaracterizes facts." However, "[t]his is not a valid objection to a written discovery request." *Shakespear v. Wal-Mart Stores, Inc.*, No. 2:12-cv-01064-MMD-PAL, 2012 U.S. Dist. LEXIS 205322 at *10 (D. Nev. Nov. 5, 2012) (internal citations omitted).

Fourth, Defendants object to the term "Amelco" as "vague and ambiguous." In the relevant requests, ISI provides the following definitions:

3. "Amelco" means AUK and AUSA, collectively, or each of AUK or AUSA individually.

4. "AUK" means defendant Amelco UK LTD, and all agents, employees, representatives (including insurers), investigators, consultants, and attorneys of Amelco UK LTD—in all cases whether agents or contractors.

5. "AUSA" means defendant Amelco USA, LLC, and all agents, employees, representatives (including insurers), investigators, consultants, and attorneys of Amelco USA, LLC—in all cases whether agents or contractors.[29]

Thus "Amelco" refers collectively to AUSA and AUK, which operate as a single entity in the U.S.[30] Neither AUSA, AUK, nor their counsel are confused by the meaning of "Amelco" in this context. It means the U.S. sales of the specific products at issue, in the specific time period at issue, whether reported by AUSA or AUK (each of which received materially identical RFPs).

Fifth, Defendants assert that each request is "vague, overbroad, and unduly burdensome in that it purports to compel production of a broad category of documents, irrespective of time period or relevance to the claims in this matter." This is false. RFP No. 29 is expressly limited in time, seeking documents from January 1, 2019 to the present. RFP No. 36 bears the same limitation, incorporated from ISI instructions stating "[u]nless otherwise specified, these requests seek documents created, authored, modified, or exchanged from January 1, 2019 through the present."[31] The documents are relevant for the reasons stated above.

Sixth, Defendants object that "AUSA objects to this request as seeking material falling outside the scope of discovery under FRCP 26(b)." This objection epitomizes conclusory boilerplate, and the Court should disregard it. See, e.g., Shakespear v. Wal-Mart Stores, Inc., LLC, No. 212CV01064MMDPAL, 2012 WL 13055159, at *2 (D. Nev. Nov. 5, 2012) (rejecting "non-specific, boilerplate objections").

Seventh, Defendants object "on grounds that it appears to seek documents or information that consist of trade secrets or other proprietary, confidential, research, development, or

---

[29] Ex. 11 at 2 (ISI Amended RFPs to AUSA).

[30] ECF No. 70 at ¶¶ 14-40.

[31] Ex. 11 at 7 (Instruction No. 13).

commercial information of AUSA [or AUK]." This is not a basis for an objection *in a trade-secret case*, especially where the Court has entered an <u>agreed</u> protective order acknowledging that:

> [T]he Parties believe that certain information that is or will be encompassed by submissions to the Court and discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information.

ECF No. 88 at 1. The parties expressly provided for the methods of disclosing and protecting such information. Defendants offer no argument as to why the agreed provisions of the Court's order are insufficient, or any other reasoning behind their objection.

<u>Eighth</u>, Defendants object to each request as seeking "material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege" before undercutting their own objection by stating that they "do[] not interpret that this request seeks such material." To be clear, ISI is not seeking the production of privileged material—only that Defendants log any material withheld as privileged as required under the Federal Rules. If Defendants fail to provide such a log, they might waive any claim to privilege. *See, e.g.*, *Shakespear*, 2012 WL 13055159, at *2. However, that issue is not yet before the Court (and hopefully will never be).

ISI has shown that the requested documents are relevant. Defendants' objections are meritless boilerplate. ISI therefore requests that the Court compel production of the documents responsive to these requests within five business days of an order, should the Court grant this motion.

**B.    The Court should compel Defendants to run search parameters provided by ISI in an effort to compromise—at Defendants' request.**

In addition to the documents described above, ISI sent Defendants a number of RFPs directed at documents concerning the business relationship between the parties and Defendants' internal discussions and discussions with third parties, concerning ISI and the parties' business relationship. These RFPs include the following:

13

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications regarding ISI.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

AUK objects to this request as follows:

1. AUSA objects to this request as overbroad and unduly burdensome in that it purports to compel production of a broad category of documents, unlimited in time and scope, irrespective of relevance to the claims in this matter.

2. AUSA objects to this request as seeking material falling outside the scope of discovery under FRCP 26(b).

3. AUSA objects to this request to the extent it seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

4. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

5. AUSA objects to this request as it is impermissibly vague to the extent it relies on the phrase ". . . regarding ISI . . ." which is susceptible to multiple overbroad interpretations. AUSA responds to this request to the best of its ability based on its subjective understanding of the language used.

Subject to, and without waiving the foregoing general and specific objections, and to the extent AUSA is able to understand this request, **AUSA states that it has produced or will produce non-privileged, responsive documents in its possession, custody, or control that are relevant to the claims at issue in this case** as AUSA understands them and which are proportional to the needs of the case. Discovery and AUSA's investigation of the claims and defenses in this matter are ongoing and AUSA reserves the right to supplement or amend its response to this request as and when appropriate.[32]

\*       \*       \*

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications exchanged between AUSA and any third party regarding ISI and/or the development, marketing, or sale hardware or

---

[32] Ex. 2 at 7-8 (AUSA) (Emphasis added); AUK's response is substantively identical. Ex. 3 at 7-8.

software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

AUSA objects to this request as follows:

1. AUSA objects to this request on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an essentially limitless category of documents relating in any way to gaming technology and/or AUSA's business affairs, which documents might reasonably include records regarding independently-developed proprietary technology, business plans and financial data, and third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would substantially outweigh any likely benefit for the litigation of material issues in this case. ISI has no colorable claim to any interest in or profits of any of AUSA's technology or business dealings with third parties, and therefore the facts and circumstances of the same are utterly irrelevant.

2. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrases "regarding ISI" and "development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution," which are susceptible to multiple interpretations and which render this request overbroad, unduly burdensome, and unintelligible as drafted.

3. AUSA objects to this request as vague, overbroad, and unduly burdensome in that it purports to compel production of a broad category of documents, unlimited in time, irrespective of relevance to the claims in this matter.

4. AUSA objects to this request as seeking material falling outside the scope of discovery under FRCP 26(b).

5. AUSA objects to this request on grounds that it appears to seek documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

6. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

Based on the foregoing specific and general objections, **AUSA has no obligation to respond to this request**.[33]

\*       \*       \*

---

[33] Ex. 2 at 15-17.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications concerning the 2019 NDA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

AUSA objects to this request as follows:

1. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

2. AUSA objects to this request to the extent it seeks documents already in the possession, custody, or control of ISI.

3. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "concerning the 2019 NDA," which is susceptible to multiple overbroad interpretations and which renders this request unduly burdensome. AUSA responds to this request to the best of its ability based on its subjective understanding of the language used.

Subject to, and without waiving the foregoing general and specific objections, and to the extent AUSA is able to understand this request, **AUSA states that it has produced or will produce non-privileged (and non-work product), responsive documents in its possession,** custody, or control that are relevant to the claims at issue in this case as AUSA understands them and which are proportional to the needs of the case. Discovery and AUSA's investigation of the claims and defenses in this matter are ongoing and AUSA reserves the right to supplement or amend its response to this request as and when appropriate.[34]

\*　　\*　　\*

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications concerning the Kiosk Agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

AUSA objects to this request as follows:

1. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

2. AUSA objects to this request to the extent it seeks documents already in the possession, custody, or control of ISI.

---

[34] Ex. 2 at 27-28.

3. AUSA objects to this request to the extent it assumes and/or mischaracterizes facts.

4. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "Kiosk Agreement," which assumes and mischaracterizes facts and which is susceptible to multiple interpretations. AUSA responds to this request to the best of its ability based on its subjective understanding of the language used.

5. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "concerning the Kiosk Agreement," which is susceptible to multiple overbroad interpretations and which renders this request unduly burdensome. AUSA responds to this request to the best of its ability based on its subjective understanding of the language used.

Subject to, and without waiving the foregoing general and specific objections, and to the extent AUSA is able to understand this request, **AUSA states that it has produced or will produce non-privileged (and non-work product), responsive documents in its possession, custody, or control** that are relevant to the claims at issue in this case as AUSA understands them and which are proportional to the needs of the case. Discovery and AUSA's investigation of the claims and defenses in this matter are ongoing and AUSA reserves the right to supplement or amend its response to this request as and when appropriate.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications regarding the Kiosk Co-Development Project.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

AUSA objects to this request as follows:

1. AUSA objects to this request to the extent it assumes and/or mischaracterizes facts.

2. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "Kiosk Co-Development Project," which assumes and mischaracterizes facts and which is susceptible to multiple interpretations, and which renders this request unintelligible as drafted.

3. AUSA objects to this request as vague and ambiguous to the extent it relies on the phrase "concerning the Kiosk Co-Development Project Agreement," which is susceptible to multiple overbroad interpretations and which renders this request unduly burdensome and unintelligible as drafted.

4. AUSA objects to this request to the extent it seeks material protected from disclosure by privilege or immunity, including attorney-client privilege, work product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

5. AUSA objects to this request to the extent it seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA that is protectable from disclosure under FRCP

26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties. For clarity, notwithstanding the foregoing objection, AUSA does not interpret that this request seeks such material.

Based on the foregoing specific and general objections, **AUSA has no obligation to respond to this request.[35]**

Defendants repeat the same meritless boilerplate objections outlined above. Additionally, Defendants vary their "vague and ambiguous" objections by referring to terms defined in the requests, *e.g.* "Kiosk Co-Development Project",[36] or to terms that are well-understood by a businessperson of ordinary intelligence and experience, *e.g.* "concerning any request for payment or payment arrangement between AUSA and ISI."

Notably however, Defendant agreed to produce documents in response to some of ISI's requests. Defendants broke this agreement, however, because they have produced nothing.

ISI tried to work with Defendants to facilitate production and resolve objections.  For example, on December 11, 2023, Defendants requested that ISI provide search terms and other parameters.[37] ISI complied within two days.[38] Defendants then ignored ISI's requests from December 13, 2023 until January 3, 2024.[39] After a meet and confer on January 3, during which Defendants' counsel raised concerns with a single term ("Bill"), ISI provided revised terms within 24 hours.[40] In the intervening weeks, ISI has pressed Defendants for an agreement on ISI's offer to compromise.

For their part, Defendants offered no substantive objection to ISI's proposed search parameters. Nor could they. The search parameters limit production to the relevant time period (from early 2019 through the present). They seek information from Amelco custodians directly involved in the Kiosk/SBBT project and Defendants' sales of products developed with ISI's

---

[35] Ex. 2 at 30-32.

[36] Defined as

[37] Ex. 4 (Dec. 11, 2023 email from T. DeArman to J. Tennert).

[38] Ex. 5 (Dec. 13, 2023 email from T. DeArman to J. Tennert); Ex. 6 (original search parameters).

[39] Ex. 7 (Jan. 4, 2024 email from T. DeArman to J. Tennert).

[40] *Id.*; Ex. 8 (revised parameters).

assistance and intellectual property. The terms are narrowly targeted (including, for example, "ISI" and "Internet Sports International").

Still Defendants produced nothing, ignored ISI's requests and offers of compromise, and refused even to answer emails.

Stated differently, ISI provided these search parameters to Amelco, *at Amelco's request*, in an effort to resolve the dispute concerning another, basic series of RFPs. Despite requesting these parameters terms, and later requesting revisions (which ISI provided), Amelco has refused to run the requested searches, provide the hit counts, or produce non-privileged results.

ISI therefore requests that the Court compel Amelco to run the attached search parameters, provide the hit counts, and produce any non-privileged results[41] within five business days of an order, should the Court grant this motion.

## C. The Court should assess costs and fees against Defendants.

Federal Rule of Civil Procedure 37(a)(5) mandates that a court assess reasonable expenses incurred in making a motion to compel discovery (including attorneys' fees) unless one of three exceptions applies:

   (i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

   (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

   (iii)   other circumstances make an award of expenses unjust.

None of the exceptions to Rule 37 applies here. ISI made every possible attempt to compromise with Defendants. In fact, this motion seeks to enforce one of the compromises offered by ISI (to which Defendants have mounted no specific objection).

Defendants' failure to produce is not justified. For example, this motion seeks (in part) to compel production that Defendants <u>agreed to make</u>.

---

[41] Logging an allegedly privileged or protected documents withheld from production.

No other circumstances make an award unjust. To the contrary, Defendants' discovery abuse has caused Plaintiffs to waste massive amounts of attorney-time and incur other expenses. In this context, it would be unjust to deny compensation to ISI, and would only encourage similar behavior going forward and in other cases.

ISI assumes that Defendants refusal to participate in discovery is client driven, giving the benefit of the doubt to counsel. For this reason, ISI requests that costs and fees be assessed against the Defendants directly, under Rule 37(a)(5)(A). ISI stands ready to provide support for its costs and fees, should the Court request that information.

## V.    CONCLUSION

For the reasons stated above, ISI respectfully requests that the Court:

1) Compel Defendants to produce their contracts with U.S. customers for retail sports-betting hardware or software;

2) Compel Defendants to run the searches described in Exhibit 8 hereto, produce a report showing the hits generated by the search, and produced the non-privileged documents that hit on those parameters (logging any allegedly privileged or protected documents withheld from production).

3) Require Defendants to pay ISI's reasonable expenses and attorneys' fees incurred in connection with this motion.

DATED: January 29, 2024

MCKOOL SMITH, PC

*/s/ Travis DeArman*
Robert M. Manley, (*pro hac vice*)
rmanley@mckoolsmith.com
Travis E. DeArman, (*pro hac vice*)
tdearman@mckoolsmith.com
Patrick Pijls, (*pro hac vice*)
ppijls@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel: (214) 978-4000
Fax: (214) 978-4044

J Christopher Jorgensen (Ba No. 5382)
cjorgensen@lewisroca.com
**Lewis Roca Rothgerber Christie LLP**
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200

*Attorneys for Plaintiff*
*Internet Sports International, Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing was filed on January 29, 2024 via the Court's CM/ECF electronic filing system addressed to all Parties on the e-service list.

*/s/ Travis E. DeArman*
Travis DeArman