# EXHIBIT 11

Travis DeArman (*pro hac vice*)
tdearman@McKoolSmith.com
Robert Manley (*pro hac vice*)
rmanley@McKoolSmith.com
Alfonso Chan (*pro hac vice* pending)
achan@McKoolSmith.com
Patrick Pijls (*pro hac vice* pending)
ppikls@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

*Attorneys for Plaintiff Internet Sports International LTD.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| INTERNET SPORTS INTERNATIONAL LTD., a foreign corporation,<br><br>        Plaintiff,<br><br>v.<br><br>AMELCO USA, LLC., a Delaware limited liability company, AMELCO UK, LTD., a Foreign corporation, and DOES I through X, Inclusive; and ROE CORPORATIONS I Through X, inclusive,<br><br>        Defendants. | Case No.: 2:23-cv-00893-ART-NJK<br><br>**INTERNET SPORTS INTERNATIONAL, LTD'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO AMELCO USA, LLC.** |

TO: Amelco USA LLC ("AUSA"), Defendant; and

TO: John D. Tennert, III and Wade Beavers, Defendants' Attorney of Record.

Plaintiff INTERNET SPORTS INTERNATIONAL, LTD., ("Plaintiff" or "ISI") requests that Defendant AUSA produce the following documents for inspection and copying pursuant to FRCP 26 and 34 within thirty (30) days from the date of service of this request.  The documents

are to be produced at the law firm of McKool Smith, P.C. located at 300 Crescent Court, STE 1200, Dallas, Texas 75201.

## DEFINITIONS

1.    "2019 MCA means the Mutual Confidentiality Agreement executed by ISI, AUK, AUSA, and JCM American Corporation (d/b/a JCM Global) on or around September 13, 2019.

2.    "2019 NDA" means the Confidentiality and Non-Disclosure Agreement executed by ISI and AUSA on or around March 12, 2019.

3.    "Amelco" means AUK and AUSA, collectively, or each of AUK or AUSA individually.

4.    "AUK" means defendant Amelco UK LTD, and all agents, employees, representatives (including insurers), investigators, consultants, and attorneys of Amelco UK LTD—in all cases whether agents or contractors.

5.    "AUSA" means defendant Amelco USA, LLC, and all agents, employees, representatives (including insurers), investigators, consultants, and attorneys of Amelco USA, LLC—in all cases whether agents or contractors.

6.    "Communications" means all oral, written, and electronic communication as, including without limitation email, paper mail, text messaging, instant messaging or other electronic messaging (including messaging through Slack, Microsoft Teams, Discord or other software), and hand-delivered documents or records. "Communications" also means the transmittal of any information (in the form of facts, ideas, inquiries, or otherwise).

7.    "Defendants" or refers to all parties listed as defendants in the caption above, including all affiliates, parent companies, agents, servants, employees, independent contractors or representatives of the listed defendants.

8.    "Document" is synonymous in meaning and equal in scope to the usage of this term in FRCP 34(a). This term encompasses any written or paper material in your possession, under your control, available at your request or in the possession of, under the control of, or available at the request of any of your agents or attorneys and includes without limitation any written or graphic

matter of every kind or description, however produced or reproduced, whether in draft, in final, original or reproduction, signed or unsigned, and regardless of whether approved, sent, received, redrafted or executed, including but not limited to written communications, letters, correspondence, memoranda, notes, records, business records, photographs, tape or sound recordings, contracts, agreements, notations of telephone conversations or personal conversations, diaries, desk calendars, reports, computer records, data compilations of any type or kind, or materials similar to any of the foregoing, however denominated and to whomever addressed. "Document" shall exclude exact duplicates when originals are available, but shall include all copies made different from originals by virtue of any writings, notations, symbols, characters, impressions or any marks thereon.

9.      "Fanatics" means Fanatics Holdings Inc. and all subsidiaries or affiliates thereof, including without limitation Fanatics Betting and Gaming and Fanatics Sportsbook.

10.      "Identify" and "identity" when used with respect to a document, or the description or identification of a document, shall be deemed to request the nature and substance of the document with sufficient particularity to enable the same to be precisely identified; the date, if any, which the document bears; the names of all persons authorizing the document; and the name and address of the custodian(s) of the original or, if none, a legible copy of the document.

11.      "Identify" and "identity" when used with respect to a person shall be deemed to request the person's full name, the person's last known business address, the person's last known residence (if a natural person), and the person's business and residence telephone numbers.

12.      "Identify" and "identity" when used with respect to an entity shall be deemed to request the complete name, principal business address and telephone number; each registered agent for service of process and the registered address of the registered agent; and the nature of the Person (e.g., corporation, partnership, etc.).

13.      "Identify" and "identity" when used with respect to Communications shall be deemed to request the date of such Communication, whether said Communication was in Person or by telephone, the Identity of each Person who participated in or heard any part of said

Communication, the substance of what was said by each Person who participated in said Communication, and the Identity of any Documents describing, reflecting, Referring To, Relating To or giving evidence of the Communication.

14.     "ISI" refers to Internet Sports International, Ltd., and all agents, employees, representatives (including insurers), investigators, consultants, and attorneys of Internet Sports International, Ltd.

15.     "Kiosk Agreement" means the contract referenced in ¶¶ 45-58 of the first amended complaint (ECF No. 30).

16.      "Kiosk Co-Development Project" refers to the work performed by ISI, AUSA and/or AUK as described in ¶¶ 32-44 of the first amended complaint (ECF No. 30).

17.     "License Agreement" means the License Agreement execute by ISI and AUSA on or about April 28, 2019.

18.     "Refer to / relating to / regarding / concerning" means any and all logical and factual connections to the subject of the discovery request.

19.     "Seminole Tribe" and/or "Hard Rock" refer to the Seminole Tribe of Florida and Hardrock International (USA) Inc. and all subsidiaries, affiliates, agents, employees, representatives (including insurers), investigators, consultants, and attorneys of the same.

20.     "Sports service betting terminal" or "SSBT' means the product, hardware, and/or software described in the letter sent by Amelco's counsel, Robert M. Riffle, on July 22, 2021.

21.     "You," "your," and "AUSA" refer to Amelco USA, LLC, and all agents, employees, representatives (including insurers), investigators, consultants and attorneys of Amelco USA, LLC—in all cases whether agents or contractors.

### INSTRUCTIONS

1.     The provisions and definitions set forth in the Federal Rules of Civil Procedure are incorporated by reference as if fully set forth herein.

2.      If, in responding to these Requests, You encounter any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

3.      You are to search all documents within your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities or in the possession of any inventor, employees, subsidiary, division, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf (whether located at his/her residence or place of business), in order to fully respond to the Requests herein.

4.      Please produce the requested documents as they are kept in the ordinary course of business.

5.      You are to produce documents from any single file in the same order as they were found in such file, including any labels, files, folders, and/or containers in which such documents are located or associated.  If copies of documents are produced in lieu of originals, such copies should be legible and bound or stapled in the same manner as the original.  If produced in electronic form, all documents shall be produced in reasonably accessible electronic form, Including, but not limited to, 300 D.P.I. Group IV compression single page TIFF format images.

6.      If you do not produce each document or thing requested herein as they are kept in the usual course of business, you must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

7.      All documents shall bear, on each page of each Document produced, a unique number that includes a symbol or abbreviation that identifies the producing party ("Bates Number").

8.      Please produce the originals of any document requested and all copies thereof if any copy is other than identical to the original.

9.      To the extent you believe that electronically stored information must be searched and/or produced in response to any Request, please provide the information requested by Federal Rule of Civil Procedure 34(b)(2)(D)–(E).

10.      Whenever in these Requests you are asked to identify or produce a document that is deemed by you to be properly withheld from production:

    a.   If you are withholding the document under a claim or privilege (including but not limited to the attorney-client privilege and the work product doctrine), please provide the information set forth in Federal Rule of Civil Procedure 26(b)(5), including:

        i.   The type of document;

        ii.   The general subject matter of the document;

        iii.   The date of the document;

        iv.   Such other information as is sufficient to identify the document, including, where appropriate, the author, addressees, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

        v.   The nature and basis of the privilege claimed;

        vi.   If the privilege claimed is the attorney-client privilege, an indication of which author(s) or addressee(s) is/are attorney(s); and

        vii.   Any other information necessary to support the claim of privilege

    b.   If production of any requested document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery;

    c.   If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, please provide the reason for withholding the document, and the information requested in sections 10(a)(i)–10(a)(iv) above.

11.     When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

12.     If any document that would have been responsive to these requests has been destroyed or is otherwise no longer in your possession, custody, or control, please provide the following information for each such document:

        a.   Description of the content of that document;

        b.   The location of all copies of the document; and

        c.   The date of, and the identity of the person responsible for, its destruction, loss, transfer, or other action by which the document left your possession, custody or control.

13.     Unless otherwise specified, these requests seek documents created, authored, modified, or exchanged from January 1, 2019 through the present.

14.     These requests are ongoing and the response provided must be supplemented to the extent required by Federal Rule of Civil Procedure 26(e).

15.     This Amended First Set of Requests For Production replaces and supersedes the requests previously served on September 27, 2023.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents and Communications wherein AUK identified itself or as AUSA or identified itself as Amelco, without distinguishing between AUK and AUSA.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to show all business conducted by AUSA in the United States generally and in the State of Nevada particularly. A complete response shall include Documents evidencing negotiations, agreements or contracts (whether executed or not), course of performance, and profits and losses.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications regarding ISI.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications regarding hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications exchanged between AUSA and ISI regarding the development of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications exchanged between AUSA and any third party regarding the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications exchanged internally by AUSA regarding the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications exchanged between Rob Bone and ISI regarding the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications exchanged between Rob Bone and AUSA regarding ISI and/or the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents and Communications exchanged between AUSA and any third party regarding ISI and/or the development, marketing, or sale hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents or Communications authored or received by Rob Bone regarding ISI and/or developing hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents and Communications exchanged between Paul Manning and ISI.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents and Communications exchanged between Paul Manning and AUSA or AUSA relating ISI and/or the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents and Communications exchanged between Paul Manning and any third party relating to ISI and/or the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 15:**

Any draft communications authored or received by Paul Manning regarding ISI and/or the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications exchanged between Leon Wynne and ISI.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications exchanged between Leon Wynne and AUSA relating to ISI and/or the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications exchanged between Leon Wynne and any third party relating to ISI and/or the development, marketing, or sale of hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 19:**

All drafts and/or copies of the License Agreement, including visible edits.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications concerning the 2019 NDA.

**REQUEST FOR PRODUCTION NO. 21:**

All drafts and/or copies of the 2019 MCA, including visible edits.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications concerning the 2019 MCA.

**REQUEST FOR PRODUCTION NO. 23:**

All drafts and/or copies of the Kiosk Agreement, including visible edits.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications concerning the Kiosk Agreement.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications regarding the Kiosk Co-Development Project.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications concerning any offer from ISI to develop, market, or sell hardware or software for a retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents and Communications concerning any request for payment or payment arrangement between AUSA and ISI.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications reflecting payment(s) made by you to ISI.

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to show every sale or license of Amelco software or hardware related to a retail gambling or gaming solution within United States, from January 1, 2019 to the present.

**REQUEST FOR PRODUCTION NO. 30:**

Documents sufficient to show every sale or license of Amelco software or hardware related to a retail gambling or gaming solution within United States, prior to January 1, 2019.

**REQUEST FOR PRODUCTION NO. 31:**

Documents sufficient to describe the technical function and operation of the hardware or software related to a retail gambling or gaming solution sold by Amelco in the Unites States, from January 1, 2019 to the present.

**REQUEST FOR PRODUCTION NO. 32:**

Documents sufficient to describe the technical function and operation of the hardware or software related to a retail gambling or gaming solution sold by Amelco in the Unites States, prior to January 1, 2019.

**REQUEST FOR PRODUCTION NO. 33:**

Documents sufficient to show all marketing, sales, or licensing of hardware or software by Amelco to Fanatics.

**REQUEST FOR PRODUCTION NO. 34:**

Documents sufficient to describe the technical function and operation of all hardware or software marketed, sold, or licensed by Amelco to Fanatics.

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to describe the development of all hardware or software marketed, sold, or licensed by Amelco to Fanatics, from February 2019 to the present.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to show all marketing, sales, or licensing of hardware or software by Amelco to Hard Rock and/or the Seminole Tribe.

**REQUEST FOR PRODUCTION NO. 37:**

Documents sufficient to describe the technical function and operation of all hardware or software marketed, sold, or licensed by Amelco to Hard Rock and/or the Seminole Tribe.

**REQUEST FOR PRODUCTION NO. 38:**

Documents sufficient to describe the development of all hardware or software marketed, sold, or licensed Amelco to Hard Rock and/or the Seminole Tribe.

**REQUEST FOR PRODUCTION NO. 39:**

All JIRA tickets or other similar Documents concerning the development of hardware or software related to any Amelco retail gambling or gaming solution developed for or offered for

sale in the United States, including without limitation JIRA tickets exchanged between Amelco and ISI.

**REQUEST FOR PRODUCTION NO. 40:**

All marketing and sales materials regarding hardware or software related to any Amelco retail gambling or gaming solution developed for or offered for sale in the United States.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents and Communications exchanged with customers or potential customers regarding hardware or software related to any Amelco retail gambling or gaming solution developed for or offered for sale in the United States, from February 2019 to the present.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents and Communications regarding the shipping of kiosks between you and ISI.

**REQUEST FOR PRODUCTION NO. 43:**

Documents sufficient to show the current location and condition of any hardware of software shipped by ISI to AUSA.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications concerning the use by AUSA of any hardware of software shipped by ISI to AUSA.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents and Communications between you and the team of Amelco service providers sent to Las Vegas in or around May of 2019.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents and Communications regarding the team of service Amelco providers sent to Las Vegas in or around May of 2019.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and Communications regarding the management of AUSA.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications between AUSA and Robert Miller regarding the management of AUSA.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents and Communications between AUSA and Damian Walton regarding the management of AUSA.

**REQUEST FOR PRODUCTION NO. 50:**

Documents sufficient to describe the development of the SSBT, including without limitation the commencement of such development, any major changes or improvements made to the SSBT, and any SSBT Hardware or Software actually marketed, sold, licensed, or offered for sale or license to Amelco customers.

**REQUEST FOR PRODUCTION NO. 51:**

All documents concerning Amelco's contention that it "independently" developed the SSBT without reference to information provided by ISI.

**REQUEST FOR PRODUCTION NO. 52:**

Documents sufficient to describe the development of the SSBT, including without limitation the commencement of such development, any major changes or improvements made to the SSBT, and any SSBT hardware or software actually marketed, sold, licensed, or offered for sale or license to Amelco customers.

**REQUEST FOR PRODUCTION NO. 53:**

Documents sufficient to describe the technical operation and function of the SSBT.

**REQUEST FOR PRODUCTION NO. 54:**

Documents sufficient to describe all sales of hardware or software related to the SSBT in the U.S.

**REQUEST FOR PRODUCTION NO. 55:**

Documents sufficient to describe all sales of hardware or software related to the SSBT outside of the U.S.

**REQUEST FOR PRODUCTION NO. 56:**

Documents sufficient to identify all persons involved in the development of hardware or software related to the SSBT.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to identify all Amelco customers that have purchased or licensed hardware or software related to the SSBT.

**REQUEST FOR PRODUCTION NO. 58:**

Documents sufficient to show the amounts paid by Amelco customers that have purchased or licensed hardware or software related to the SSBT.

**REQUEST FOR PRODUCTION NO. 59:**

Documents sufficient to identify all Amelco customers that have purchased or licensed hardware or software related to any retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market (other than the SSBT).

**REQUEST FOR PRODUCTION NO. 60:**

Documents sufficient to show the amounts paid by Amelco customers that have purchased or licensed hardware or software related to any retail gaming or gambling kiosk or other retail gaming or gambling solution in the US market (other than the SSBT).

**REQUEST FOR PRODUCTION NO. 61:**

All Documents or Communications exchanged between Amelco and any third party concerning ISI.

**REQUEST FOR PRODUCTION NO. 62:**

All Documents or Communications that Amelco intends to rely on to support any claim or defense in this matter.

DATED this 20th day of October, 2023.

/s/ Travis DeArman
Travis DeArman (pro hac vice)
Robert Manley (pro hac vice)
Alfonso Chan (pro hac vice pending)
Patrick Pijls (pro hac vice pending)
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1200
Dallas, Texas 75201

*Attorneys for Plaintiff*
*Internet Sports International, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of McKool Smith PC, and that on this 20th day of October, 2023, I caused a copy of **INTERNET SPORTS INTERNATIONAL, LTD'S AMENDED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO AMELCO USA, LLC** to be served via electronic mail to the parties listed below:

John D. Tennert, III (Nev. Bar No. 11728)
Wade Beavers (Nev. Bar No. 13451)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Tel: (775) 788-2200
Fax: (775) 788-2283
Email: jtennert@fennemorelaw.com
wbeavers@fennemorelaw.com

*/s/ Travis DeArman*
Travis DeArman