Robert M. Manley (*pro hac vice*)
Travis E. DeArman (*pro hac vice*)
Patrick Pijls (*pro hac vice*)
**MCKOOL SMITH, PC**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel: (214) 978-4000
Fax: (214) 978-4044
rmanley@mckoolsmith.com
tdearman@mckoolsmith.com
ppijls@mckoolsmith.com

J Christopher Jorgensen (Bar No. 5382)
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV  89169
Tel: (702) 949-8200
cjorgensen@lewisrcoa.com

*Attorneys for Plaintiff Internet Sports International, Ltd.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Internet Sports International, Ltd., | Case No.: 2:23-cv-00893-ART-NJK |
| Plaintiff, | **PLAINTIFF ISI'S FIRST MOTION TO COMPEL INTERROGATORY RESPONSES** |
| v. | |
| Amelco USA, LLC. et al., | |
| Defendants. | |

Plaintiff Internet Sports International, Ltd. ("ISI") requests an order compelling Defendants Amelco USA, LLC ("AUSA") and Amelco UK, Ltd. ("AUK") (collectively "Amelco" or "Defendants") to answer six interrogatories to which (save one) Defendants refuse to provide ***any*** response. Because Defendants' objections are meritless, because Defendants are eleven days past their own self-imposed deadline to serve supplemental interrogatory responses to avoid this motion

(February 9, 2024), and because Defendants are guilty of ongoing discovery misconduct, ISI also seeks an award of fees and costs.

## I.   FACTUAL BACKGROUND

In the interest of brevity, ISI does not re-hash the subject matter of this action. ISI's motions to modify the case schedule[1] and to compel document production[2] cover those issues.

This motion concerns Defendants' refusal to respond to six interrogatories, all of which target critical discovery. Defendants rely on meritless, boilerplate objections. Defendants and counsel have stonewalled and abused the discovery and conference processes, further undermining ISI's ability to timely prosecute this action.

Pursuant to Local Rule 26-6, counsel for ISI conducted three conferences in an effort to resolve or at least narrow the parties' disputes.[3] On Monday January 22, the parties' counsel met and conferred on case status, including discovery. ISI's counsel asked Defendants' counsel to confirm by January 30 whether Defendants would answer interrogatories.[4] On January 29, 2024, after Amelco's counsel still had not responded, ISI's counsel sent a follow-up email.[5] Then, on January 31, 2024, counsel met and conferred in-person about the interrogatories (among other things). The following day, ISI's counsel again followed up with Amelco's counsel via email.[6]

On February 2, Amelco's counsel responded, stating: "***[W]e will supplement the interrogatories next week.***"[7] In other words Defendants (through counsel) promised to supplement

---

[1] ECF No. 78 (motion); ECF No. 84 (response and non-opposition); ECF No. 86 (reply).

[2] ECF No. 83 (motion; ECF No. 85 (response and partial opposition); ECF No. 87 (reply).

[3] DeArman Decl. ¶¶ 3-6.

[4] Ex. 1 at 5-6, Email from T. DeArman to J. Tennert (Jan. 22, 2024).

[5] Ex. 1 at 3-4, Email from T. DeArman to J. Tennert (Jan. 29, 2024).

[6] Ex. 1 at 2-3, Email from T. DeArman to J. Tennert (Feb. 1, 2024).

[7] Ex. 1 at 2, Email from J. Tennert to T. DeArman (Feb. 2, 2024).

the relevant interrogatory answers **no later than February 9** (the following Friday). Defendants and counsel broke that promise.

On February 6, the parties conferred by phone (again).[8] On February 8, the day before Defendants' self-imposed deadline, ISI's counsel reminded Defendants' counsel of its obligations:[9]

> We will be looking for Amelco's supplemental ROG responses **tomorrow**. As discussed on the meet-and-confer Tuesday, I am not concerned with the timing of the verification. If that is what is holding up the responses, we can agree to verify at a later date. The important thing, from our perspective, is getting substantive responses that will allow us to move forward.

On February 9, however, Amelco's counsel reneged on the promise, writing "We aim to produce of batch of documents and supplemental responses to interrogatories **early next week**."[10] ISI's counsel raised this broken promise; requested supplemental responses by the following Tuesday (February 13); and requested that Defendants at least identify the responses they would by supplementing:[11]

> Last Friday, Feb. 2, you said "[s]ubject to the stated objections, we will supplement the interrogatories next week"—i.e. on or before today. I pinged you on this several times to try and keep things moving. Now you say that you "aim" to supplement "early next week." I need to know, today, what are numbers of the interrogatories for which Amelco will provide supplemental responses? **By Tuesday (2/13) I need the responses.** Otherwise, we will have to go to the court, again.

February 13 passed, and Defendants had still not served supplemental responses (or even responded to the counsel's email). ISI's counsel again followed up:[12]

> I repeat the questions below:
>
> Which interrogatories is Amelco amending?

---

[8] DeArman Decl. ¶ 6.

[9] Ex. 2 at 1, email from T. DeArman to J. Tennert (Feb. 8, 2024) (emphasis added).

[10] Ex. 3 at 1, email from J. Tennert to T. DeArman (Feb. 9, 2024) (emphasis added).

[11] Ex. 3 at 1, email from T. DeArman to J. Tennert (Feb. 9, 2024) (emphasis added).

[12] Ex. 3 at 1, email from T. DeArman to J. Tennert (Feb. 13, 2024).

> When will it serve the amended responses?
>
> We are now 14 days past our last meet-and-confer on this topic, and four days past the deadline you set for yourself. ISI will have no choice but to file additional motions, if Amelco will not even take a position (or even respond to emails).

As of this filing, Defendants are ***eleven days*** past their self-imposed deadline (February 9). Defendants have not served supplemental responses or even responded to emails from ISI's counsel.

## II.   LEGAL STANDARD.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The Federal Rules of Civil Procedure contemplate full and equal discovery so as to prevent surprise, prejudice, and perjury during trial. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) (internal citations omitted). "Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope." *Sci. Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2017 U.S. Dist. LEXIS 109488 (D. Nev. July 13, 2017) (internal citations omitted).

The movant bears the initial burden of presenting a well-reasoned motion supported by case law. *See*, e.g., *Tasty One, LLC v. Earth Smarte Water, LLC*, No. 2:20-cv-01625-APG-NJK, 2021 U.S. Dist. LEXIS 258596 (D. Nev. Aug. 2, 2021) (internal citation omitted). "However, the party resisting discovery bears the burden of showing why the discovery should be denied," and "[t]o meet this burden, the party resisting discovery must specifically detail the reasons for why each request is objectionable; the party may not rely on boilerplate, generalized, conclusory, or speculative arguments." *Id.* (citations omitted); *see also V5 Techs., LLC v. Switch, LTD.*, 2:17-CV-2349-KJD-NJK, 2020 WL 1042515 (D. Nev. Mar. 3, 2020).

Federal Rule of Civil Procedure 37 calls for the assessment of reasonable expenses and attorneys' fees against a party that necessitates the need for a motion to compel, unless the court finds that "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

## III.   ARGUMENT AND AUTHORITY

ISI moves to compel Defendants to respond to six interrogatories to which Defendants offer no response whatsoever.[13]

### A.   The Court should overrule Defendants' boilerplate objections.

Defendants erroneously rely on five boilerplate objections that they copy-and-paste across their responses. ISI addresses these boilerplate objections first, followed by the specific requests and objections.

#### 1.   The Court should overrule Defendants' "mischaracterizes facts" objection.

For all Interrogatories at issue but Interrogatory No. 5, Defendants repeat the following "mischaracterizes facts" objection:[14]

> AUSA objects to this Interrogatory on grounds that it assumes and/or mischaracterizes facts.

The objection is a legal nullity. *See Shakespear v. Wal-Mart Stores, Inc., LLC*, No. 212CV01064MMDPAL, 2012 WL 13055159, at *2-3 (D. Nev. Nov. 5, 2012) (labeling the

---

[13] The interrogatories are Interrogatory Nos. 3, 4, 5, 11, 12, and 13. Interrogatory Nos. 12 and 13 are effectively identical—seeking the same information about Defendants' sales or licensures of infringing technology to two third parties.

[14] AUSA's Resp. 7 (Interrogatory No. 3), 9 (Interrogatory No. 4), 16 (Interrogatory No. 11), 18 (Interrogatory No. 12), 20 (Interrogatory No. 13).

objection "assume[s] facts not yet established in discovery" as "non-specific" and "boilerplate" and overruling it, reasoning that it is "not a valid objection to a written discovery request").

### 2.   The Court should overrule Defendants' "confidentiality" objection.

For all Interrogatories at issue, Defendants repeat the following "confidentiality" objection:[15]

> AUSA objects to this Interrogatory on grounds that its seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA (including actual or proposed business plans, prospective transactions, and/or forward-looking financial information) that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

The Court should overrule that objection because the parties moved for a protective order (and the Court granted one) precisely so that Defendants could satisfy their discovery obligations while maintaining protected materials' confidentiality. Under the order, Defendants may answer the Interrogatories and designate the answers as "confidential," "highly confidential," or as "attorneys' eyes only."[16] Defendants offer no specific facts that would render production under the protective order problematic.

### 3.   The Court should overrule Defendants' "privilege" objection.

For all Interrogatories at issue but Interrogatory No. 5, Defendants repeat the following "privilege" objection:[17]

> AUSA objects to this Interrogatory to the extent it seeks information protected from disclosure by privilege or immunity, including attorney-client privilege, work-product doctrine, and/or the common interest privilege. For clarity, notwithstanding

---

[15] AUSA Resp. 7 (Interrogatory No. 3), 8 (Interrogatory No. 4), 16 (Interrogatory No. 11), 17 (Interrogatory No. 12), 19 (Interrogatory No. 13).

[16] ECF No. 66 at 2, Protective Order ¶ 1.

[17] AUSA's Resp. 7 (Interrogatory No. 3), 9 (Interrogatory No. 4), 17 (Interrogatory No. 11), 18 (Interrogatory No. 12), 20 (Interrogatory No. 13).

> the foregoing objection, AUK [*sic*] does not interpret that this request seeks such material.

The Court should overrule that objection because ISI seeks no privileged information, and indeed, Defendants admit that they do "not interpret that this request seeks such material."

### 4. The Court should overrule Defendants' "compound" objection.

For all Interrogatories at issue, Defendants repeat the following "compound" objection:[18]

> AUSA objects to this Interrogatory as it is improperly compound and unduly burdensome. Accounting for the discrete subparts of this Interrogatory as separate interrogatories, ISI has exceeded the limit of 25 written interrogatories without leave in violation of FRCP 33(a)(1), relieving AUSA of any duty to respond.

The Court should overrule that objection. ISI's interrogatories are not impermissibly compound, but the Court need not reach that issue. For starters, Defendants object to ISI's interrogatory No. 1 as "compound" and exceeding the 25-interrogatory default.[19] What is more, Defendants waived any objection. "When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond." *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005). Here, Defendants have answered certain Interrogatories[20] and have waived accordingly. *Cf, e.g.*, *Allahverdi*, 228 F.R.D. at 698 (finding waiver and granting a motion to compel interrogatory answers).

---

[18] AUSA's Resp. 7 (Interrogatory No. 3), 9 (Interrogatory No. 4), 10 (Interrogatory No. 5), 16 (Interrogatory No. 11), 18 (Interrogatory No. 12), 20 (Interrogatory No. 13).

[19] AUSA's Resp. 4 (Interrogatory No. 1).

[20] *See, e.g.*, AUSA Resp. 4 (Interrogatory No. 1).

5.      **The Court should overrule Defendants' "undue burden" objection.**

For all Interrogatories at issue but Interrogatory No. 5, Defendants repeat the "undue burden" objection:[21]

> AUSA objects to this Interrogatory as overbroad and unduly burdensome to the extent it purports to compel AUSA to compile an exhaustive description of discrete communications relating to an vaguely-defined and overbroad subject matter, which, under certain interpretations, might compel a time-consuming compilation of a narrative response where the burden and expense would significantly outweigh any likely benefit to the case.

The Court should overrule that objection. "A party objecting to discovery cannot simply recite the familiar litany of objections, such as overly broad, burdensome, or oppressive, but must show specifically how each request is burdensome 'by submitting affidavits or offering evidence revealing the nature of the burden.'" *Neal-Lomax v. Las Vegas Metro. Police Dep't*, No. 205CV01464PMPRJJ, 2007 WL 9728801, at *4 (D. Nev. Mar. 28, 2007). *See Shakespear v. Wal-Mart Stores, Inc., LLC*, No. 212CV01064MMDPAL, 2012 WL 13055159, at *3 (D. Nev. Nov. 5, 2012) (requiring "specific examples supported by factual detail"). Defendants offer no explanation—let alone evidence—explaining why it would be "unduly burdensome" to respond to ISI's interrogatories. *Cf., e.g.*, *Neal-Lomax*, 2007 WL 9728801, at *4 (overruling an "unduly burdensome" objection to an interrogatory).

B.      **The Court should overrule Defendants' remaining objections.**

The Court should likewise overrule Defendants' few specific objections.

1.      **Interrogatory No. 3**

The Interrogatory concerns Defendants' efforts to develop and sell products built using ISI assistance, confidential information, and trade secrets:[22]

---

[21] AUSA's Resp. 7 (Interrogatory No. 3), 8-9 (Interrogatory No. 4 (similar)), 16 (Interrogatory No. 11 (similar)), 18 (Interrogatory No. 12 (similar)), 19 (Interrogatory No. 13 (similar)).

[22] AUSA's Resp. 6-7 (Interrogatory No. 3).

INTERROGATORY NO. 3: Describe AUSA's effort to develop, market, sell, or otherwise deliver hardware or software used as part of a retail gambling or gaming solution within United States (including without limitation the SSBT), from August 2018 to the present. A complete response shall include every meeting conducted in the United States (whether in-person or remote), the persons involved in each such meeting, the specific topic or subject matter of the meeting, the software and/or hardware to which the meeting related, and the physical location of the meeting.

RESPONSE TO INTERROGATORY NO. 3:

1. AUSA objects to this Interrogatory on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an exhaustive description of communications regarding independently-developed proprietary technology, business plans, and third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would outweigh any likely benefit for the litigation of material issues in this case. ISI is well-aware that AUSA has not participated in any business arrangement with any third party relating to technology that incorporates any "trade secret" of ISI, and therefore the facts and circumstances of any third-party business relationships of AUSA are utterly irrelevant.

2. AUSA objects to this Interrogatory on grounds that its seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA (including actual or proposed business plans, prospective transactions, and/or forward-looking financial information) that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

3. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the phrases "effort to develop, market, sell, or otherwise deliver hardware or software used as part of a retail gambling or gaming solution," "including without limitation the SSBT," and "every meeting," which are susceptible to multiple overbroad interpretations and which render this Interrogatory unintelligible as drafted.

4. AUSA objects to this Interrogatory as overbroad and unduly burdensome to the extent it purports to compel AUSA to compile an exhaustive description of discrete communications relating to an vaguely-defined and overbroad subject matter, which, under certain interpretations, might compel a time-consuming compilation of a narrative response where the burden and expense would significantly outweigh any likely benefit to the case.

5. AUSA objects to this Interrogatory on grounds that it assumes and/or mischaracterizes facts.

6. AUSA objects to this Interrogatory as it is improperly compound and unduly burdensome. Accounting for the discrete subparts of this Interrogatory as separate interrogatories, ISI has exceeded the limit of 25 written interrogatories without leave in violation of FRCP 33(a)(1), relieving AUSA of any duty to respond.

> 7. AUSA objects to this Interrogatory to the extent it seeks information protected from disclosure by privilege or immunity, including attorney-client privilege, work-product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUK [*sic*] does not interpret that this request seeks such material. Based on the foregoing general and specific objections, AUSA has no obligation to respond to this Interrogatory.
>
> Based on the foregoing general and specific objections, AUSA has no obligation to respond to this Interrogatory.

As a threshold matter, Defendants repeat the same first objection for each of the interrogatories subject to this motion (except for No. 5).[23] It combines various objections, claims "independent development" (ironically, the subject matter of interrogatory No. 11), and then argues that the "facts and circumstances of any third-party business relationships of AUSA are utterly irrelevant":

> AUSA objects to this Interrogatory on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purportng to compel AUSA to provide an exhaustive description of communications regarding independently-developed proprietary technology and third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would outweigh any likely benefit for the litigation of material issues in this case. ISI is well-aware that AUSA has not participaed in any business arrangement with any third party relating to technology that incorporates any "trade secret" of ISI, and therefore the facts and circumstances of any third-party business relationships of AUSA are utterly irrelevant.

ISI interprets this as a relevance objection. That objection is meritless.

To be permissible, discovery must be "relevant to any party's claim or defense," and "[r]elevance for the purposes of discovery is defined broadly." *V5 Technologies* 334 F.R.D. at 309. Interrogatory No. 3 seeks information concerning the development and sale of the specific products (hardware and software) that ISI alleges Amelco built using ISI's assistance, confidential information, and trade secrets.[24] The relevance of this information is not subject to serious dispute.

---

[23] AUSA Resp. 6 (Interrogatory No. 3), 8 (Interrogatory No. 4), 15-16 (Interrogatory No. 11), 17 (Interrogatory No. 12), 19 (Interrogatory No. 13).

[24] *See* ECF No. 70 at ¶¶ 41-95.

Defendants try to evade the obvious relevance of ISI's interrogatories by assuming non-liability. Specifically, Defendants claim that their retail gambling hardware and software were "independently-developed" and that "ISI is well-aware that [they] ha[ve] not participated in any business arrangement with any third party relating to technology that incorporates any 'trade secret' of ISI, and therefore the facts and circumstances of any third-party business relationships of AUSA are utterly irrelevant."

ISI has alleged that Defendants used ISI's assistance, Confidential Information, and trade secrets to build hardware and software for retail sports betting; that Defendants are now selling or licensing that hardware and software in the U.S.; and that in doing so, Defendants have violated federal and state trade-secret statutes, breached contracts, and defrauded ISI (among other claims).[25] ISI's operative complaint sets out extensive factual support for its claims—claims Defendants did not challenge in any dispositive motion.

Defendants cannot assume that they are not liable, falsely state that ISI concedes the absence of liability, and argue that all information therefore is irrelevant.

Defendants' sole remaining objection to Interrogatory No. 3 (other than the boilerplate addressed above and the "relevance objection") is the objection that certain phrases are "vague and ambiguous": (1) "effort to develop, market, sell, or otherwise deliver hardware or software used as part of a retail gambling or gaming solution," (2) "including without limitation the SSBT,"[26] and (3) "every meeting."

"Courts do not look favorably on efforts to avoid discovery premised on epistemological nit-picking." *Alvarado-Herrera v. Acuity*, No. 222CV00438CDSNJK, 2022 WL 18108429, at *2

---

[25] *See generally* ECF. No. 70.

[26] Defendants repeat this objection for Interrogatory No. 4. AUSA Resp. 8. The Court should overrule that objection for the same reasons given herein.

11

(D. Nev. Nov. 8, 2022), *aff'd sub nom. Alvarado-Herrera v. Acuity A Mut. Ins. Co.*, No. 222CV00438CDSNJK, 2023 WL 5035323 (D. Nev. Aug. 4, 2023). "If there exists legitimate confusion about the wording of a discovery request, counsel should work cooperatively to agree to alternate wording that resolves the confusion." *Id.* Defendants offer no explanation of why the selected phrases are ambiguous.[27] Indeed, Defendants know how to ask for clarification when they want clarification: Defendants, for example, asked for clarification on three interrogatories, and ISI's counsel provided clarification.[28] Yet Defendants have sought no clarification on any interrogatory that is the subject of this motion. (No clarification is needed.) Defendants have likewise proposed no alternative language to which they would agree. *Cf., e.g.*, *Alvarado-Herrera*, 2022 WL 18108429, at *2-3 (overruling an ambiguity objection to an interrogatory and compelling an answer).[29]

Defendants failed to act because the scope of interrogatory No. 3 is clear and unambiguous. The Court should therefore compel Defendants to respond.

### 2.   Interrogatory No. 4

The Interrogatory concerns Defendants' sales or licensures of the technology of which ISI alleges infringement:[30]

> INTERROGATORY NO. 4: Identify and describe every sale or license, in the United States, of Amelco hardware or software related to retail gambling or gaming kiosks, or other retail solutions for gaming or gambling (including without

---

[27] *See* ECF No. 70, Sec. Am. Compl.

[28] *See* Ex. 1 at 2-3, email from T. DeArman to J. Tennert (Feb. 1, 2024) (summarizing an in-person meet-and-confer).

[29] For Interrogatory No. 5, Defendants objected to the following terms as "vague and ambiguous": "kiosks" and "shipped between." Defendants nonetheless gave an (incomplete) answer to that Interrogatory, noting that they responded to the "best of [their] ability based on [their] subjective understanding of the language used." AUSA Resp. 10. Ex. 4 to this motion is an email exchange between ISI and Defendants' employees including color pictures of the kiosks at issue, as well as shipping details. Defendants' employees and counsel understand these terms; to assert this objection in this context is further support for an award of costs and fees under Rule 37.

[30] AUSA Resp. 8-9 (Interrogatory No. 4).

limitation the SSBT). A complete response shall include the dates of any sale or license, the identity of the customer or other party to the transaction, the product(s) sold or licensed, and the price or other consideration paid to Amelco.

RESPONSE TO INTERROGATORY NO. 4:

1. AUSA objects to this Interrogatory on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an exhaustive description of transactions regarding independently-developed proprietary technology, business plans, and third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would outweigh any likely benefit for the litigation of material issues in this case. ISI is well-aware that AUSA has not participated in any business arrangement with any third party relating to technology that incorporates any "trade secret" of ISI, and therefore the facts and circumstances of any third-party business relationships of AUSA are utterly irrelevant.

2. AUSA objects to this Interrogatory on grounds that its seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA (including actual or proposed business plans, prospective transactions, and/or forward-looking financial information) that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

3. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the phrases "Amelco hardware or software related to retail gambling or gaming kiosks," "other retail solutions for gaming or gambling," and "including without limitation the SSBT," which are susceptible to multiple overbroad interpretations and which render this Interrogatory unintelligible as drafted.

4. AUSA objects to this Interrogatory as overbroad and unduly burdensome to the extent it purports to compel AUSA to compile an exhaustive description of discrete communications relating to an vaguely-defined and overbroad subject matter, which, under certain interpretations, might compel a time-consuming compilation of a narrative response where the burden and expense would significantly outweigh any likely benefit to the case.

5. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the defined term "Amelco," which is susceptible to multiple interpretations and which renders this Interrogatory unintelligible and/or overbroad. AUSA responds to this Interrogatory on its own behalf based on information within its possession, custody, and control under FRCP 34, and does not purport to respond on behalf of any other party or non-party to this litigation.

6. AUSA objects to this Interrogatory on grounds that it assumes and/or mischaracterizes facts.

7. AUSA objects to this Interrogatory as it is improperly compound and unduly

burdensome. Accounting for the discrete subparts of this Interrogatory as separate interrogatories, ISI has exceeded the limit of 25 written interrogatories without leave in violation of FRCP 33(a)(1), relieving AUSA of any duty to respond.

8. AUSA objects to this Interrogatory to the extent it seeks information protected from disclosure by privilege or immunity, including attorney-client privilege, work-product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUK [*sic*] does not interpret that this request seeks such material.

Based on the foregoing general and specific objections, AUSA has no obligation to respond to this Interrogatory.

Defendants' boilerplate and "relevance" objections fail for the same reasons stated above. Defendants' sole remaining objection to Interrogatory No. 4 is again that it is "vague and ambiguous." Defendants' first purportedly ambiguous term is "Amelco." This objection is meritless on its face and the Court should overrule it. *Cf., e.g.*, *Fed. Deposit Ins. Corp. v. Lewis*, No. 2:10-CV-439-JCM-VCF, 2014 WL 7330931, at *4 (D. Nev. Dec. 18, 2014) (holding that the meaning of "you" or "your" was not ambiguous and compelling interrogatory answers, reasoning that the "court will not entertain [the defendant's] arguments in order to make the request appear [ambiguous]").[31] Defendants' next purportedly ambiguous terms are (1) "Amelco hardware or software related to retail gambling or gaming kiosks" and (2) "other retail solutions for gaming or gambling." Defendants employ sophisticated business and technical personnel that understand these concepts and phrases, as do Defendants' counsel. Defendants have neither requested clarification on this Interrogatory nor proposed alternative language.

### 3.    Interrogatory No. 5

The Interrogatory concerns, among other things, the whereabouts of two ISI kiosks that ISI shipped to Defendants during the parties' relationship:[32]

Describe in detail every time kiosks were shipped between you and ISI. A complete response shall include the dates of the shipment(s), where the kiosks were sent to and from, the purpose of the shipment(s), whether the shipment(s) were made at

---

[31]  Defendants repeat this objection for Interrogatory Nos. 11, 12, and 13. AUSA's Resp. 16 (Interrogatory No. 11), 18 (Interrogatory No. 12), 20 (Interrogatory No. 13). The Court should overrule those objections for the same reason.

[32]  AUSA Resp. 9-10.

one party's request, and whether AUSA still retains possession of kiosks received from ISI (and if not the disposition of those kiosks).

RESPONSE TO INTERROGATORY NO. 5:

1. AUSA objects to this Interrogatory as it is improperly compound and unduly burdensome. Accounting for the discrete subparts of this Interrogatory as separate interrogatories, ISI has exceeded the limit of 25 written interrogatories without leave in violation of FRCP 33(a)(1), relieving AUSA of any duty to respond.

2. AUSA objects to this Interrogatory to the extent it seeks information already in the possession, custody, or control of ISI.

3. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the undefined term/phrase "kiosks" and "shipped between." AUSA response to this Interrogatory to the best of its ability based on its subjective understanding of the language used.

Subject to, and without waiving, the foregoing general and specific objections, and to the extent AUSA is able to understand this Interrogatory, AUSA states that, based on the information presently available to it, it understands that kiosks were shipped in connection with the Wildwood project that was the subject of the License Agreement between ISI and AUSA, which kiosks were sourced via Bill Stearns at ISI such that information relevant to this request would already be in ISI's possession, custody, and control. AUSA's investigation of this matter is ongoing and AUSA reserves its right to supplement or amend this Interrogatory as and when appropriate.

Defendants' boilerplate objections fail for the same reasons stated above.[33] Moreover, a detailed response to this interrogatory is <u>critical</u>, and Defendants' attempt at evasion is telling. This is because in 2019, ISI shipped two fully functional ISI sports-betting Kiosks to Amelco U.K.[34] Amelco U.S.'s former president, Robert Bone, described the purpose behind this shipment in his sworn deposition, stating that ISI provided Defendants with an examples of its functioning U.S. sports-betting kiosks so that Defendants' engineers could copy the functionality of ISI's products.[35] As discovery progresses (including through the depositions of Defendants' technical witnesses), ISI will further develop the record. In sum, however, ISI provided access to its

---

[33] Defendants do not assert a relevance objection.

[34] Ex. 4 (email confirming shipment of one of the two kiosks, including color photographs).

[35] Ex. 5, Bone Depo Tr. 126:1-128:8.

hardware _and_ software, so that Defendants' engineers could copy the functions and features of ISI's products.

The details concerning how Amelco performed that copying, or otherwise used ISI's hardware and software in developing its products, are among the most important issues in this case. Plaintiffs have requested that Defendants produce the Kiosks themselves for introduction into evidence. A critical step in this process will be identifying the current location, status, and condition of these kiosks.

Finally, Defendants object that ISI already knows the information that ISI seeks. That argument fails for two reasons. For starters, a party may avoid answering an interrogatory only if the party asking the interrogatory could procure the response with "less burden[]." _See_ Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants offer no explanation why answering this Interrogatory poses any burden whatsoever, let alone a burden greater than that on ISI. Second, and more importantly, ISI does not know—and has no way of knowing (absent this discovery)—what Defendants did with ISI's kiosks once they were delivered to Amelco UK's offices in London and Leeds, England.

When the parties' relationship ended, the kiosks were, to ISI's knowledge, still in Defendants' custody. So ISI asks: Where are they? What happened to them? Defendants offer no answers.

### 4.     Interrogatory No. 11

The Interrogatory concerns, among other things, Defendants' defense and contention that they independently developed the products at issue.[36]

> INTERROGATORY NO. 11: Describe Amelco's allegedly "independent" development of the SSBT as claimed in the letter sent by Amelco's counsel, Robert M. Riffle, on July 22, 2021. A complete response shall include the identification of all persons involved in the development of the SSBT, a description of each person's contribution or role in the development, the dates on which development of the

---

[36] AUSA Resp. 15-17.

SSBT commenced and ended, the location of that development, and a technical description of the SSBT.

RESPONSE TO INTERROGATORY NO. 11:

1. AUSA objects to this Interrogatory on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an exhaustive description of independently-developed proprietary technology, the provision of which would impose an unfair and undue burden on AUSA (and non-parties) which would outweigh any likely benefit for the litigation of material issues in this case. ISI is well-aware that the sports service betting terminal described in the referenced letter was developed without the use of any "trade secrets" of ISI, and therefore the facts and circumstances of its development are utterly irrelevant.

2. AUSA objects to this Interrogatory on grounds that its seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA (including actual or proposed business plans, prospective transactions, and/or forward-looking financial information) that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.

3. AUSA objects to this Interrogatory as overbroad and unduly burdensome to the extent it purports to compel AUSA to compile an exhaustive description of discrete transactions relating to an vaguely-defined and overbroad subject matter, which, under certain interpretations, might compel a time-consuming compilation of a narrative response where the burden and expense would significantly outweigh any likely benefit to the case.

4. AUSA objects to this Interrogatory on grounds that it assumes and/or mischaracterizes facts.

5. AUSA objects to this Interrogatory as vague and overbroad in scope in that it lacks a defined time period.

6. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the defined term "Amelco," which is susceptible to multiple interpretations and which renders this Interrogatory unintelligible and/or overbroad. AUSA responds to this Interrogatory on its own behalf based on information within its possession, custody, and control under FRCP 34, and does not purport to respond on behalf of any other party or non-party to this litigation.

7. AUSA objects to this Interrogatory as it is improperly compound and unduly burdensome. Accounting for the discrete subparts of this Interrogatory as separate interrogatories, ISI has exceeded the limit of 25 written interrogatories without leave in violation of FRCP 33(a)(1), relieving AUSA of any duty to respond.

8. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the phrases "development of the SSBT," "identification of all persons involved in the development," and "technical description of the SSBT," which are susceptible to multiple overbroad interpretations and which render this Interrogatory unintelligible as drafted.

> 9. AUSA objects to this Interrogatory to the extent it seeks information protected from disclosure by privilege or immunity, including attorney-client privilege, work-product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUK [*sic*] does not interpret that this request seeks such material.
>
> Based on the foregoing general and specific objections, AUSA has no obligation to respond to this Interrogatory.

The Court should overrule Defendants' boilerplate objections for the same reasons state above.

Defendants' relevance objection is particularly meritless because Defendants base the objection on the argument that Defendants' retail sports-betting hardware and software are "independently-developed proprietary technology." Of course, this is the <u>whole point of interrogatory No. 11.</u>

Defendants object that the Interrogatory is "vague and overbroad in scope in that it lacks a defined time period."[37] The objection is meritless. The Interrogatory references a specific letter written by Defendants' lawyer, claiming that Defendants independently development the relevant technology after the parties' relationship ended:[38]

> Amelco replaced the Leeds team that worked on the Wildwood specific kiosk, and hired a team to develop a very different SSBT and related software and systems. This SSBT, in contrast to the original "Bespoke System" that was built for Wildwood, is on a completely different codebase and features a full web based application which is loaded from a web server. The new Amelco SSBT and the entire web application was developed independently by Amelco, and has full CMS support.

Thus the time period for this interrogatory is inherently limited, unless Defendants made false claims in their correspondence (a possibility).

Second, Defendants object to the following phrases as "vague and ambiguous": (1) "development of the SSBT," (2) "identification of all persons involved in the development," and

---

[37] Defendants repeat this objection for Interrogatory Nos. 12 and 13.

[38] Ex. 6, Letter from R. Riffle to W. Stearns et al. 5 (July 22, 2021).

(3) "technical description of the SSBT." These phrases are intelligible in light of the operative

pleading and Defendants' sophistication. Defendants have neither requested clarification on this

Interrogatory nor proposed alternative language.

### 5.     Interrogatory Nos. 12 and 13

Interrogatory Nos. 12 and 13 are effectively identical—seeking the same information about

Defendants' sales or licensures of infringing technology to two third parties:[39]

> INTERROGATORY NO. 12: Describe in detail the hardware and/or software sold or licensed by Amelco to the Seminole Tribe or Hard Rock. A complete response shall include a technical description of the hardware and/or software sold or licensed, the amount of hardware or software sold or licensed, and the consideration received by Amelco for the sale or license—whether cash or otherwise.
>
> RESPONSE TO INTERROGATORY NO. 12:
>
> 1. AUSA objects to this Interrogatory on grounds that it appears to be propounded for no purpose other than to burden, harass, and annoy AUSA, its business partners, and customers by purporting to compel AUSA to provide an exhaustive description of independently-developed proprietary technology and details regarding confidential third-party business relationships, the provision of which would impose an unfair and undue burden on AUSA (and on non-parties) which would outweigh any likely benefit for the litigation of material issues in this case. ISI is well-aware that AUSA has not participated in any business arrangement with any third party relating to technology that incorporates any "trade secret" of ISI, and therefore the facts and circumstances of any third-party business relationships of AUSA are utterly irrelevant.
>
> 2. AUSA objects to this Interrogatory on grounds that its seeks documents or information that consist of trade secrets or other proprietary, confidential, research, development, or commercial information of AUSA (including actual or proposed business plans, prospective transactions, and/or forward-looking financial information) that is protectable from disclosure under FRCP 26(c) or other applicable law, and/or which is prohibited from disclosure by contractual obligations to third parties.
>
> 3. AUSA objects to this Interrogatory as overbroad and unduly burdensome to the extent it purports to compel AUSA to compile an exhaustive description of discrete transactions relating to an vaguely-defined and overbroad subject matter, which, under certain interpretations, might compel a time-consuming compilation of a narrative response where the burden and expense would significantly outweigh any likely benefit to the case.

---

[39] One entity is Seminole Hard Rock Digital, LLC. The other entity is Fanatics. Because the Interrogatories are otherwise identical, ISI copies the interrogatory and objections and responses for Hard Rock only. AUSA Resp. 17-19.

4. AUSA objects to this Interrogatory on grounds that it assumes and/or mischaracterizes facts.

5. AUSA objects to this Interrogatory as vague and overbroad in scope in that it lacks a defined time period.

6. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies on the defined term "Amelco," which is susceptible to multiple interpretations and which renders this Interrogatory unintelligible and/or overbroad. AUSA responds to this Interrogatory on its own behalf based on information within its possession, custody, and control under FRCP 34, and does not purport to respond on behalf of any other party or non-party to this litigation.

7. AUSA objects to this Interrogatory as it is improperly compound and unduly burdensome. Accounting for the discrete subparts of this Interrogatory as separate interrogatories, ISI has exceeded the limit of 25 written interrogatories without leave in violation of FRCP 33(a)(1), relieving AUSA of any duty to respond.

8. AUSA objects to this Interrogatory as vague and ambiguous to the extent it relies

on the phrases "hardware and/or software sold or licensed by Amelco to the Seminole Tribe or Hard Rock," "a technical description of the hardware and/or software," "amount of hardware or software," and "consideration received by Amelco for the sale or license – whether cash or otherwise," which are susceptible to multiple overbroad interpretations and which render this Interrogatory unintelligible as drafted.

9. AUSA objects to this Interrogatory to the extent it seeks information protected from disclosure by privilege or immunity, including attorney-client privilege, work-product doctrine, and/or the common interest privilege. For clarity, notwithstanding the foregoing objection, AUK [*sic*] does not interpret that this request seeks such material.

Based on the foregoing general and specific objections, AUSA has no obligation to respond to this Interrogatory.

The Court should overrule Defendants' boilerplate objections and "relevance" objection for the same reasons state above. Defendants' time-based objections also lack merit, as ISI only seeks information about sales made during or after Defendants' dealings with ISI.

The Court likewise should overrule Defendants' remaining objections. Defendants object to the following phrases as "vague and ambiguous": (1) "hardware and/or software sold or licensed by Amelco to the Seminole Tribe or Hard Rock," (2) "a technical description of the hardware and/or software," (3) "amount of hardware or software," and (4) "consideration received by Amelco for the sale or license – whether cash or otherwise." These phrases are intelligible in light

of the operative pleading, and Defendants have neither requested clarification on this Interrogatory nor proposed alternative language.

### C.     The Court should assess costs and fees against Defendants.

Federal Rule of Civil Procedure 37(a)(5) mandates that a court assess reasonable expenses incurred in making a motion to compel discovery (including attorneys' fees) unless one of three exceptions applies:

> (i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii)   other circumstances make an award of expenses unjust.

None of the exceptions to Rule 37 applies here. ISI made every possible attempt to compromise with Defendants. In fact, this motion seeks to enforce Defendants' own promise to serve supplemental interrogatory answers by February 9.

Defendants' failure to produce is not justified. For example, this motion seeks (in part) to compel interrogatory answers that Defendants <u>agreed to supplement</u>.

No other circumstances make an award unjust. To the contrary, Defendants' discovery abuse has caused Plaintiffs to waste massive amounts of attorney-time and incur other expenses. In this context, it would be unjust to deny compensation to ISI, and would only encourage similar behavior going forward and in other cases.

ISI assumes that Defendants' refusal to participate in discovery is client driven, giving the benefit of the doubt to counsel. For this reason, ISI requests that costs and fees be assessed against the Defendants directly under Rule 37(a)(5)(A). ISI stands ready to provide support for its costs and fees, should the Court request that information.

**IV.    CONCLUSION**

For the reasons stated above, ISI respectfully requests that the Court:

1)  Compel Defendants to answer Interrogatory Nos. 3, 4, 5, 11, 12, and 13.

2)  Require Defendants to pay ISI's reasonable expenses and attorneys' fees incurred in connection with this motion.

DATED: February 20, 2024

**MCKOOL SMITH, PC**

*/s/ Travis DeArman*
Robert M. Manley, (*pro hac vice*)
rmanley@mckoolsmith.com
Travis E. DeArman, (*pro hac vice*)
tdearman@mckoolsmith.com
Patrick Pijls, (*pro hac vice*)
ppijls@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel: (214) 978-4000
Fax: (214) 978-4044

J Christopher Jorgensen (Ba No. 5382)
cjorgensen@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Pkwy, Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200

*Attorneys for Plaintiff*
*Internet Sports International, Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing was filed on February 20, 2024 via the Court's CM/ECF electronic filing system addressed to all Parties on the e-service list.

*/s/ Travis E. DeArman*
Travis DeArman