JOHN D. TENNERT, III (Nev. Bar No. 11728)
THERESE M. SHANKS (Nev. Bar No. 12890)
WADE BEAVERS (Nev. Bar No. 13451)
MARYJO E. SMART (Nev. Bar No. 16139)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Tel: (775) 788-2200 / Fax: (775) 788-2283
jtennert@fennemorelaw.com
tshanks@fennemorelaw.com
wbeavers@fennemorelaw.com
msmart@fennemorelaw.com

*Attorneys for Amelco UK Ltd. and Amelco USA, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| INTERNET SPORTS INTERNATIONAL, LTD., a foreign corporation; | CASE NO.: 2:23-CV-00893-ART-NJK |
| Plaintiff, | |
| vs. | |
| AMELCO USA, LLC, a Delaware limited liability company; AMELCO UK LTD., a foreign corporation, and DOES I THROUGH X, INCLUSIVE; AND ROE CORPORATIONS I through X, inclusive, | **OPPOSITION TO PLAINTIFF ISI'S SECOND MOTION TO COMPEL DOCUMENT PRODUCTIONS RESPONSIVE TO ISI'S REQUEST NOS. 31, 39, 43, and 44** |
| Defendants. | |

Defendants Amelco USA, LLC ("AUSA") and Amelco UK, Ltd. ("AUK") (collectively, "Amelco") hereby oppose Plaintiff Internet Sports International, Ltd.'s ("ISI") Second Motion to Compel Document Productions Responsive to ISI's Request Nos. 31, 39, 43, and 44 (ECF No. 96) (the "Motion"). This Opposition is based on the below memorandum of points and authorities, the Declaration of John D. Tennert, III; the exhibits and papers on file and attached to the Declaration of John D. Tennert, III, and any other pleadings and papers on file with this Court.

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND BACKGROUND

ISI's conclusory assertion that AUSA and AUK have refused to meaningfully participate in the meet-and-confer process in an effort to "run out the clock on discovery" is hyperbolic and asks this Court to needlessly parse through cherry-picked email traffic.  *See F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986) ("Discovery is supposed to proceed with minimal involvement of the Court.").  To the contrary, AUSA and AUK have repeatedly offered to supplement further its responses once ISI is able to identify its alleged "trade secrets" with reasonable particularity.  *See* ECF No. 96-5 at 4.

As with its two previous motions to compel, ISI seeks a premature order from this Court compelling AUSA and AUK to produce documents without "meaningfully articulat[ing] what it claims AUSA and AUK misappropriated or improperly used that belongs to ISI…." Def.'s Response at 2:19–20 (ECF No. 92).  ISI should therefore be required to articulate its trade secrets with specificity so that AUSA and AUK can formulate an appropriate response.[1]  Until then, AUSA and AUK cannot sensibly respond to impermissibly overbroad and burdensome requests, such as request No. 31, that generally seek "hardware or software related to retail gambling or gaming solution sold by Amelco in the United States," without first understanding what ISI claims are its trade secrets. Otherwise, if ISI's trade secrets do not actually exist, ISI may "mold its cause of action around the discovery it receives." *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007).

Notwithstanding, AUSA and AUK, in a good faith effort to avoid court intervention, have worked to produce for ISI the kiosk(s) and JIRA tickets arising from request Nos. 39, 43, and 44. Specifically, AUSA and AUK confirmed that they have located one kiosk, which AUSA and AUK will make available for ISI's inspection. *See* ECF No. 96-5 at 4 ("We are aware of at least one kiosk that was shipped from Las Vegas to London.").  In fact, counsel for the parties recently

---

[1] As detailed in the other responses to ISI's motions, AUSA and AUK reserve their rights to supplement their responses to ISI's requests at issue herein in a good faith effort to avoid necessitating court intervention on this matter.

FENNEMORE.
7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

travelled to London, England for depositions and engaged in additional discussions about the kiosk.

Additionally, on March 26, 2024, AUSA and AUK produced a JIRA log/ledger which ISI claims, without explanation, is "unusable." ECF No. 96-9 at 4. A day later, on March 27, 2024, AUSA and AUK offered to determine "whether further responsive documents exist or are capable of being produced in a format different than what…has already [been] produced." ECF No. 96-9 at 2–4.

Notably, contrary to ISI's declaration, the parties had not substantively conferred on the JIRA ticket and kiosk disputes following the above correspondence. The conferences that took place on March 21st and 27th largely concerned *ISI's* deficient interrogatory responses—not the requests at issue in this Motion. *See* ECF No. 96-6 at 5 (detailing the meet and confer topics). ISI briefly raised the issues related to the JIRA ticket and kiosk raised at the end of each conference without an actual resolution as to whether the parties had reached an impasse. Ex. 1, Tennert Decl. ¶¶ 8–9.

Despite these efforts, on April 1, 2024, ISI filed the instant Motion while the parties were travelling to the UK for depositions. As a consequence, ISI's actions can hardly be described as a "sincere effort" to resolve the matter informally without the assistance of this Court. *See Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993) ("Inherent in Rule 190–1(f)(2)'s language, and essential to the Rule's proper operation, is the requirement that parties treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes.").

Because ISI has failed to meaningfully articulate what it claims AUSA and AUK misappropriated or improperly used that belongs to ISI, the Motion should be denied or, in the alternative, ISI should be required to articulate its trade secrets with specificity so that AUSA and AUK can formulate an appropriate response. Additionally, ISI's Motion should be denied to the extent it asks this Court to resolve ongoing negotiations, in violation of Local Rule 26, that arise from overbroad and burdensome requests related to the JIRA tickets and kiosk(s), which are the

**FENNEMORE**

7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

subject of ongoing meet and confer or moot as AUSA and AUK have already produced relevant documents within its possession.

## II.    LEGAL STANDARD

Under Rule 37, a party may move to compel the production of documents if a party fails to produce documents requested under Rule 34.  Fed. R. Civ. P. 33(a)(3)(B)(iv).  Before moving to compel, however, the moving party is required to certify that it has met and conferred in good faith before seeking judicial intervention.  Fed. R. Civ. P. 33(a); *see Marshall v. CBE Group, Inc.*, 216CV02406GMNNJK, 2017 WL 10900254, at *1 (D. Nev. Apr. 3, 2017) (internal citations omitted).  As this Court has explained:

> Discovery is supposed to proceed with minimal involvement of the Court . . . Counsel should strive to be cooperative, practical and sensible, and should seek judicial intervention only in extraordinary situations that implicate truly significant interests . . . A threshold issue in the review of any motion to compel is whether the movant made adequate efforts to resolve the dispute without court intervention.

*Marshall,* 2017 WL 10900254, at *1.

To meet this obligation, parties must "treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes . . . This is done when the parties 'present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions."  *Russell Rd. Food & Beverage, LLC v. Galam*, 2:13-CV-0776-JCM-NJK, 2014 WL 12816123, at *1 (D. Nev. May 12, 2014).  "Only after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be a 'sincere effort' to resolve the matter . . . To ensure that parties comply with these requirements, movants must file certifications that 'accurately and specifically convey to the court who, where, how, and when the respective parties attempted to personally resolve the discovery dispute.'"  *Id.*  Under Local Rule 26-6, "[d]iscovery motions will not be considered unless the movant (1) has made a good faith effort to meet and

**FENNEMORE.**
7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

confer as defined in LR IA 1-3(f) before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and confer conference about each disputed discovery request." Additionally, under Local Rule 26-6, all motions to compel discovery must "set forth in full the text of the discovery originally sought and any response to it."

Rule 26 provides that, unless otherwise limited by court order, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Although this rule has been construed broadly, "the scope of discovery under the federal rules is not boundless; the requests must be relevant and cannot be unreasonably cumulative, duplicative, or unnecessarily burdensome in light of their benefit." *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 526 (D. Nev. 1997).  Further, a district court has broad discretion in controlling discovery and determining whether propounded discovery is burdensome and oppressive. *Id.*

Finally, when the party opposing discovery demonstrates that the discovery requests are overly broad, unduly burdensome and irrelevant by providing specific facts regarding the nature and extent of burden or detail regarding the time, money and procedures required to comply with the improper request, the court may fashion any order which justice requires to protect a party from undue burden, oppression or expense.  *Collins v. Landry's Inc.*, 2:13-CV-1674-JCM-VCF, 2014 WL 2770702, at *3 (D. Nev. June 17, 2014).

## III.   ARGUMENT

### A.   As a Threshold Matter, the Court Should Deny ISI's Motion Because ISI Failed to Comply with Local Rule 26-6.

Local Rule 26-6 requires that the parties meaningfully meet and confer before filing a discovery motion, and that, upon filing, the movant submits a declaration "setting forth the details and results of the meet-and confer conference about each disputed discovery request."  The meet

FENNEMORE.

7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

1    and confer requirement is not a "formalistic prerequisite to, judicial resolution of discovery

2    disputes," but rather requires that the parties discuss their positions and support for their positions.

3    *Russell Rd. Food & Beverage, LLC v. Galam*, 2:13-CV-0776-JCM-NJK, 2014 WL 12816123, at

4    *1 (D. Nev. May 12, 2014).  Here, as with its preceding motions, ISI has treated the meet and

5    confer process and a formulaic "check the box" without meaningfully meeting and conferring by

6    agreeing to identify its alleged trade secrets with specificity to permit AUSA and AUK to

7    meaningfully respond, or allowing AUSA and AUK to gather information surrounding the JIRA

8    tickets and alleged multiple kiosks.  ISI's post hoc email summaries of the conferences serve only

9    to benefit its own manufactured narrative that AUSA and AUK are somehow obstructing the

10   discovery process, when in reality, ISI has rushed the discovery process to no parties' benefit.

11          For example, ISI's declaration attached to the Motion simply provides that on March 21st

12   and 27th the parties met and conferred on "among other issues, the JIRA tickets and Amelco's

13   refusal to produce technical documents."  ECF No. 96-2 at ¶8.  However, as noted above, the

14   March 21st and March 27th conferences were scheduled as an attempt to resolve ISI's objections

15   to AUSA and AUK's interrogatories, and not—as ISI has characterized it—conferences to

16   meaningfully resolve the JIRA ticket and kiosk issues.  Further, AUSA and AUK have produced

17   a JIRA log/ledger and informed ISI of the location of the kiosk located, which AUSA and AUK

18   will make available for inspection.  Thus, this Motion not only premature, but also unnecessary

19   considering the conversations between the parties, and ISI's request to compel documents to their

20   requests should be denied on this basis alone.

21          **B.**     **ISI Has Failed to Identify Its Trade Secrets with Reasonable Particularity.**

22          AUSA and AUK's objections to Request No. 31, 39, 43, and 44 are all based upon the fact

23   that ISI's requests seek information that consists of trade secrets or other proprietary, confidential,

24   research, development, or commercial information of AUSA and AUK.  Without specifying in

25   any meaningful detail what exactly ISI claims that AUSA or AUK took of ISI's, ISI seeks to

26   uncover every "effort" AUSA or AUK (or their customers) has taken to develop "hardware or

27   software related to retail gambling or gaming solution sold by Amelco in the United States" from

28

2019 forward.  Responding to these requests, without narrowing, would require AUSA and AUK disclose its own, and its customers', trade secrets to ISI and allow ISI to engage in a fishing expedition to determine what it wants to decide is its trade secret.  *See Switch Communications Group v. Ballard*, 2:11-CV-00285-KJD, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) ("Several courts have held that a party alleging a claim for misappropriation of trade secrets is required to identify its alleged trade secrets with reasonable particularity before it will be allowed to compel discovery of its adversary's trade secrets."); *DeRubeis*, 244 F.R.D. at 680 (discussing the four policies which support delaying trade secret discovery until trade secret plaintiff sufficiently describes trade secrets at issue, including: (1) without this, lawsuits might regularly be filed as fishing expeditions; (2) "until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant;" (3) "it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated;" and (4) "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.").  Thus, requiring AUSA and AUK to provide responses without ISI meaningfully identifying, via meet and confer or otherwise, its specific alleged trade secrets, would be contrary to the policies outlined in *DeRubeis v. Witten Techs*.

Contrary to ISI's assertion that it has identified its trade secrets with requisite particularity, simply identifying general categories of software and hardware does not prove ownership of a trade secret.  Rather, plaintiffs in a trade secret case "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons…skilled in the trade."  *Imax Corp v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998).  Plaintiffs must "clearly refer to tangible trade secret material" instead of referring to a "system which *potentially* qualifies for trade secret protection." *Id.* at 1167 (emphasis in the original).  Plaintiffs may not simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at trial.  *See Imax*, 152 F.3d at 1167; *X6D Ltd. v. Li-Tek Corps. Co.*, No. 10-cv-2327-GHK-PJWx, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27,

FENNEMORE.

7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

2012); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819 (W.D. Wis. 2001) ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets.").

Here, ISI has simply provided a list of "some of examples of the types of documents we are looking for" to demonstrate "Amelco's technical capabilities," but ISI itself has failed to meaningfully identify its trade secrets in this case. *See* ECF No. 96 at 10. In written discovery for example, ISI has regurgitated the allegations in its complaint and only identified limited "trade secrets," including kiosk(s) it allegedly shipped to the UK (without specifying the components therein in detail), unspecified information contained in JIRA tickets exchanged between the parties, and the identities of a hand full of "suppliers" of ISI. ISI then indicated that it would supplement its responses with a separate "Trade Secret Disclosure" at some unidentified future date. *See* Exhibit 1 to Declaration of John D. Tennert, III, Plaintiff ISI's Objections and Responses to AUSA's Second Set of Interrogatories (filed under seal). However, providing general areas of information (information contained in thousands of JIRA tickets and broad unspecified allegations of hardware and software) can hardly be described as particularized and concrete trade secrets, and, in contrast, ISI's discovery requests to AUK and AUSA broadly encompasses all of Amelco's technical information, and could potentially sweep in information that is not relevant to any of ISI's claims in this lawsuit. *See Switch*, 2012 WL 2342929, at *6. Based on the foregoing, ISI's Motion as to all requests should be denied until it can sufficiently identify its trade secrets with requisite particularity.

**C.**   **ISI's Requests for Production of Documents Nos. 31, 39, 43, and 44 Are Overbroad, Burdensome, and Disproportionate to the Needs of the Case.**

Under Rule 26:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26 was amended in 2015 to emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (citing the Chief Justice's Year-End Report describing the amendments).  Under the current rules, "[t]he fundamental principle of amended Rule 26(b)(1) is 'that lawyers must size and shape their discovery requests to the requisites of a case.' . . . The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery." *Id.*; *Kregg v. Maldonado*, 98 A.D.3d 1289, 1290, 951 N.Y.S.2d 301, 302 (2012) ("[I]t is well settled that a party need not respond to discovery demands that are overbroad . . . [w]here discovery demands are overbroad, the appropriate remedy is to vacate the entire demand rather than to prune it.") (internal citations omitted).

ISI's instant Motion seeks to compel requests that are overbroad, burdensome, and disproportionate to the needs of the case under FRCP 26 in that they seek the production of a broad category of documents that would include records regarding technology developed by AUSA and AUK, which have nothing to do with ISI's claims for misappropriation or improper use of its alleged confidential information.  Request 31 seeks documents describing the "technical function and operation" of Amelco's "hardware or software related to retail gambling…in the United States, from January 1, 2019 to the present"; Request No. 39 seeks "all JIRA tickets or other similar Documents concerning the development of hardware or software related to any Amelco gambling or gaming solution developed for or offered for sale in the United States…", and Request Nos. 43 and 44 both seek "Documents" or "Communications" concerning the use of any "hardware or software shipped by ISI to AUK."

ISI characterizes AUSA and AUK's objections to these requests as "boilerplate," but under the circumstances they are appropriate because ISI's requests seek a broad category of documents which would impose an unfair and undue burden on AUSA and AUK.  Specifically, the documents sought might reasonably include records of AUSA's, AUK's proprietary technology, financial

FENNEMORE.

7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

1    data, and third-party business relationships.  This harm substantially outweighs any likely benefit

2    for the litigation of material issues in this case.  *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 310

3    (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, 2:17-CV-2349-KJD-NJK, 2020

4    WL 1042515 (D. Nev. Mar. 3, 2020) ("Succinctly stated, the party opposing discovery bears the

5    burden of showing the disputed discovery is not relevant, a burden that is met by specifically

6    detailing the reasons why each request is irrelevant.").

7         As to Request No. 31, ISI asks AUSA and AUK to provide "documents sufficient to

8    describe the technical function and operation of the hardware or software related to a retail

9    gambling or gaming solution sold by Amelco in the United States, from January 1, 2019 to the

10   present."  ECF No. 96 at 3.  AUSA and AUK objected to this request on the basis that it is

11   harassing, unduly burdensome, and overly broad.  ISI has issue with AUSA and AUK's objections

12   because ISI has allegedly "provided Amelco with specific types of technical documents that

13   Amelco might produce."  ECF No. 96 at 22:1–2.  However, as previously noted, ISI may not

14   simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at

15   trial.  *See Imax*, 152 F.3d at 1167.  ISI's general categories of documents are not tailored to what

16   trade secrets have been allegedly misappropriated, and are thus not tailored to ISI's claims because

17   ISI has failed to identify what specifically it seeks.

18        As to Request No. 39, ISI is seeking "[a]ll JIRA tickets or other similar Documents

19   concerning the development of hardware or software related to *any* Amelco retail gambling or

20   gaming solution developed for or offered for sale in the United States, including without limitation

21   JIRA tickets exchanged between Amelco and ISI."  ECF No. 96 at 4–5 (emphasis added).  AUSA

22   and AUK have objected to this request because it would compel AUK to provide "an essentially

23   limitless category of documents relating in any way to gaming technology…."  Disclosure of every

24   JIRA ticket or document of AUSA and AUK's hardware or software in the gaming space,

25   unlimited in time, would require AUSA and AUK to disclose confidential third-party information

26   and its own trade secrets, without ISI specifying exactly what it claims AUSA and AUK have

27

28

**FENNEMORE.**

7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

improperly used or misappropriated.  This is not proper and amounts to a fishing expedition for trade secrets.  *See Switch*, 2012 WL 2342929, at *4; *DeRubeis*, 244 F.R.D. at 680.

As to the vague and ambiguous term "JIRA ticket or other similar Document," AUSA and AUK objections to this term is meritorious, as, again, ISI has failed to meaningfully identify what exactly it claims AUSA and AUK have taken or used improperly, and it is not at all clear what specific hardware or software ISI seeks AUSA and AUK to describe.  Notwithstanding these objections, AUSA and AUK have provided ISI a JIRA ticket log/ledger, but ISI has simply concluded, without explanation, that such information is "unusable." ECF No. 96-9 at 4.

As to Request Nos. 43 and 44, ISI asks for "Documents" or "Communications" concerning the "use by AUK of any hardware or software shipped by ISI to AUK." ECF No. 96 at 6.  AUK provided a response requesting that ISI "clarify what is being sought…."  It was eventually determined that ISI seeks information regarding "two kiosks shipped from ISI to the United Kingdom." ECF No. 96 at 17:6.   Essentially, ISI is requesting information regarding when the kiosks were sent, to whom and from whom, the purpose, etc.  ISI concedes that it already knows the requested information since ISI specifically argues in its Motion that it was the party that shipped the kiosks. *Id.*

Nevertheless, in an effort to cooperate, AUSA and AUK have identified one kiosk that was shipped from Las Vegas to the UK and disclosed this fact to ISI.  As to a second kiosk, AUSA and AUK are in the process of locating whether such a kiosk was in fact received by ISI and as of this date have been unable to locate such kiosk or confirm whether such kiosk was shipped.  AUSA and AUK have already agreed to supplement their responses as appropriate as discovery is ongoing.

### D.    The Court Should Not Award Sanctions Under FRCP 37, as AUK and AUSA's Objections Are Substantially Justified, and Awarding Sanctions Would Be Unjust.

Under Federal Rule of Civil Procedure 37, a court must not order payment of a movant's expenses, including attorneys' fees, if: (i) the movant filed the motion before attempting in good

FENNEMORE
7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200
46080164.1/061759.0001

1   faith to obtain the disclosure or discovery without court action; (2) the opposing party's

2   nondisclosure, response, or objection was substantially justified; or (3) other circumstances make

3   an award of expenses unjust.  Here, all three subsections are met.

4   First, ISI prematurely filed its Motion without meaningfully meeting and conferring as to

5   each and every request that it has moved to compel and address AUSA and AUK's objections.  ISI

6   's emails demanding that AUSA and AUK supplement their responses, without meaningfully agre

7   eing to reach some resolution to narrow and clarify its requests, does not amount to a good faith ef

8   fort to meet and confer.  *See Russell Rd. Food & Beverage, LLC v. Galam*, 2:13-CV-0776-JCM-N

9   JK, 2014 WL 12816123, at *1 (D. Nev. May 12, 2014) ("Only after all the cards have been laid on

10  the table, and a party has meaningfully assessed the relative strengths and weaknesses of its positi

11  on in light of all available information, can there be a 'sincere effort' to resolve the matter . . . To e

12  nsure that parties comply with these requirements, movants must file certifications that 'accurately

13  and specifically convey to the court who, where, how, and when the respective parties attempted t

14  o personally resolve the discovery dispute.'"); Decl. of Travis DeArman In Further Support of ISI'

15  s Mot. To Compel (ECF 96-2) (providing short shrift to any attempt to reach a resolution  between

16  the parties).   The parties were in the process of meeting and conferring regarding AUSA and

17  AUK's responses when this Motion was filed.  In fact, in an effort to avoid court intervention, AU

18  SA and AUK have agreed to supplement their responses if ISI is able to identify  its  trade  secrets

19  with  reasonable  particularity,  have  already  produced  JIRA  ticket information in their possess

20  ion, and continue to search for an alleged second kiosk, if any such kiosk exists.

21

22  Second, AUSA and AUK's objections were substantially justified.  *See Roberts v. Clark*

23  *Cnty. Sch. Dist.*, 312 F.R.D. 594, 609 (D. Nev. 2016) (citing *Pierce v. Underwood*, 487 U.S. 552,

24  565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)) (declining to award monetary sanctions on a motion

25  to compel where "a position was substantially justified in that the parties had a genuine dispute on

26  matters on which reasonable people could differ as to the appropriate outcome.").  Many of ISI's

27  requests are impermissibly overbroad and not tailored to its claims in this case.  *See* FRCP 26

28

**FENNEMORE**

7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

46080164.1/061759.0001

(defining the scope of discovery as "any nonprivileged matter that is *relevant to any party's claim* or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit) (emphasis added). For example, request No. 31 seeks a *vast* production of documents describing the technical function and operation of Amelco's hardware and software in the United States regardless of whether that would relate to ISI's claims.

Third, awarding sanctions in this circumstance would be unjust. The parties have been in the process of meeting and conferring on the issues raised in this Motion, AUK and AUSA have in fact produced information in response, and ISI's Motion is premature considering that AUSA and AUK have indicated a willingness to produce additional documents subject to ISI's narrowing of the scope of the requests and appropriately identifying its purported trade secrets. Thus, any attorneys' fees incurred as a result of filing the Motion was in the control of ISI and fees incurred as a result of meet and confer efforts could have been avoided had ISI propounded reasonable and appropriately tailored requests.

## IV.    CONCLUSION

Based on the foregoing, Amelco respectfully requests that the Court deny ISI's Second Motion to Compel Document Productions Responsive to ISI's Request Nos. 31, 39, 43, and 44.

Dated: April 15, 2024.

**FENNEMORE CRAIG, P.C.**


By:  */s/ John D. Tennert*_____
John D. Tennert, III (Nev. Bar No. 11728)
Therese M. Shanks (Nev. Bar No. 12890)
Wade Beavers (Nev. Bar No. 13451)
MaryJo E. Smart (Nev. Bar No. 16139)

*Attorneys for Amelco UK, Ltd. and Amelco USA, LLC*



7800 Rancharrah Parkway
RENO, NEVADA 89511
(775) 788-2200

1

**CERTIFICATE OF SERVICE**

2

      I certify that I am an employee of FENNEMORE CRAIG, P.C., and that on this date,

3

pursuant to FRCP 5(b), I am serving a true and correct copy of the **OPPOSITION TO**

4

**PLAINTIFF ISI'S SECOND MOTION TO COMPEL DOCUMENT PRODUCTIONS**

5

**RESPONSIVE TO ISI'S REQUEST NOS. 31, 39, 43, and 44** on the parties set forth below by:

6

7

     _____      Hand delivery at parties' 16.1 conference

8

     _____      Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage

9

prepaid, following ordinary business practices

10

     _____      Certified Mail, Return Receipt Requested

11

     _____      Via email, per the parties' agreement

12

     _____      Placing an original or true copy thereof in a sealed envelope and causing

13

the same to be personally Hand Delivered

14

     _____      Federal Express (or other overnight delivery)

15

     \_\_XX\_\_      E-service effected by CM/ECF

16

17

addressed as follows:

18

J. Christopher Jorgensen, Esq.          Robert Manley, Esq.
**Lewis Roca Rothgerber Christie LLP**   Travis E. DeArman, Esq.

19

3993 Howard Hughes Parkway       Patrick Pijls, Esq.
Suite 600                            **McKool Smith, PC**

20

Las Vegas, NV 89169             300 Crescent Court, Suite 1500
cjorgensen@lewisroca.com        Dallas, Texas 75201

21

*Attorney for Plaintiff*               rmanley@mckoolsmith.com

22

tdearman@mckoolsmith.com

23

achan@mckoolsmith.com
ppijls@mckoolsmith.com

24

*Attorneys for Plaintiff*

25

DATED:  April 15, 2024.

26

                                    */s/ Shawna Charleton*
                                    Employee of FENNEMORE CRAIG, P.C.

27

28

**FENNEMORE.**

46080164.1/061759.0001

14