**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

INTERNET SPORTS INTERNATIONAL, LTD.,

       Plaintiff(s),

v.

AMELCO USA, LLC, et al.,

       Defendant(s).

Case No. 2:23-cv-00893-ART-NJK

**Order**

[Docket Nos. 127, 129, 131, 133, 134, 136, 137, 139, 141, 142, 144, 145, 146, 147, 148, 149, 150, 237, 238, 239, 240, 241, 242, 243, 244, 245]

Despite pleas from the Court to engage in discovery in a cooperative manner as required by rule, by case law, and by common sense, *e.g.*, Docket No. 122, counsel have chosen to continue down a path of scorched-earth warfare. The parties' bellicosity is once again front and center in mass discovery motion practice the parties filed after the close of discovery. Docket Nos. 127, 129, 131, 133, 134, 136, 137, 139, 141, 142, 144, 145, 146, 147, 148, 149, 150, 237, 238, 239, 240, 241, 242, 243, 244, 245. As with earlier filings, each motion acts as a trebuchet lobbing accusations of misconduct and requests for sanctions, only to be answered with a volley of counter-accusations and counter-requests for sanctions. As with earlier filings, the parties cannot agree on the facts, the law, or anything else.[1]

That the parties insist on these overly-aggressive tactics is all the more problematic given the muddy trenches they've created while doing so. The arguments presented are often convoluted, ill-developed, and supported by representations that are not borne out by the record or cited legal authority.[2] One might suspect that counsel simply threw together every conceivable discovery

---

[1] The grudge-like feuding permeates every filing. One need look no further than the eight-page motion to strike discovery motions that had been filed a few minutes late. *See* Docket No. 157. There are many, many other examples, though, and this is by no means a one-sided problem.

[2] A lack of candor was already an identified concern in the case. Docket No. 91 at 4.

1

argument within a few days of the Court's indication that it would enforce the outer deadline for discovery motions. *See* Docket No. 130. On top of all that, the Court has already expended extraordinary judicial resources resolving myriad sealing issues with respect to these disputes, *see, e.g.*, Docket Nos. 202, 220, 222, 223, 224, 225, 231, 232, 233, 234, 235, 254, 255, 256, 257, 258, 259, the volume of which appears to have been significantly heightened by over-designation of documents as confidential, a lack of understanding of the governing standards and procedures, and sloppiness. The Court has also expended its scarce resources discerning which filings consist of a set of motion practice given that counsel docketed many of their filings erroneously. *See, e.g.*, Docket No. 186 (one of many discovery responsive briefs improperly linked to the motion to seal at Docket No. 140, rather than the underlying discovery motion); Docket No. 206 (one of many discovery replies improperly linked to the motion to seal at Docket No. 140 given the improper docketing of the responsive briefs).[3]

Against that backdrop, the Court notes the unfortunate procedural posture: these discovery motions have been pending for several months and the parties briefed summary judgment motions in the interim. The Court takes to heart the guidance that "[i]t is generally more important to the parties that [a discovery] dispute be decided promptly than that it be decided perfectly." Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, § 11.424 (4th ed. 2004). The Court also appreciates the wisdom of former United States Magistrate Judge Peggy A. Leen that it is unfair to the other litigants in this courthouse for a judge to drop everything to prioritize a case in which the parties refuse to cooperate in discovery and seek an inordinate amount of judicial time. *See Mazzeo v. Gibbons*, 2010 WL 3020021, at *1 (D. Nev. July 27, 2010) (quipping that a magistrate judge is "not the Maytag repairman of federal judges desperately hoping for something to do"). Hence, the parties' myriad discovery motions are being resolved now that they have "worked [their] way up the tall stack of matters on [the undersigned's] desk." *Id.*

---

[3] These are the most obvious problems that have sapped judicial resources, but this is by no means the extent of the local rules violations.

Turning to these discovery motions themselves, the Court does not require a hearing, *see* Local Rule 78-1, and will resolve the motions as stated below.[4]  The parties are familiar with the facts of the case, so the Court will not provide a factual or procedural background.  Given the volume of motion practice and the desire to avoid further unnecessary delay, the Court will not analyze in writing every issue raised.  The Court has implicitly rejected any argument not addressed herein that is inconsistent with the outcome of this order.  *See, e.g.*, *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1099 (D. Nev. 2022).

## I.    Motion to Compel Interrogatory Responses and Trade Secret Disclosures (Docket Nos. 127, 129)

Defendants filed a motion to compel interrogatory responses and trade secret disclosures.  Docket Nos. 127, 129.  Plaintiff filed a response.  Docket No. 155.  Defendants filed a reply.  Docket Nos. 165, 167.

The instant dispute turns on whether Plaintiff has sufficiently identified its trade secrets in its responses to interrogatories and its disclosures.  Among various arguments, Plaintiff contends that Defendants' arguments are not properly raised in the context of this type of discovery motion in the present circumstances.  *See, e.g.*, Docket No. 155 at 2, 19-20.[5]

Disputes as to the sufficiency of trade secret identification generally arise in two contexts: (1) at the beginning of discovery when the defendant objects to disclosing its own sensitive information prior to a proper identification of the plaintiff's own trade secrets, and (2) in dispositive motion practice.  The policy considerations animating the first line of cases include the following:

> (1) If discovery on defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as "fishing expeditions" to discover the trade secrets of a competitor; (2) until the trade secret plaintiff has identified the trade secrets at issue with some specificity, there is no way to know whether the information sought is relevant; (3) it is difficult for a defendant to mount a defense until

---

[4] The Court cites herein to the pagination provided by CMECF as opposed to the native pagination in the parties' papers.

[5] Similar legal arguments are made in other briefing pending before the Court.  *See, e.g.*, Docket No. 209 at 4.

> it has some indication of the trade secrets allegedly misappropriated;
> and (4) requiring the plaintiff to state its claimed trade secrets prior
> to engaging in discovery ensures that it will not mold its cause of
> action around the discovery it receives.

*Switch Comms. Grp. v. Ballard*, 2012 WL 2342929, at *2 (D. Nev. June 19, 2012) (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007)).  These concerns are at their height at the outset of the case before discovery has been conducted (and with potentially voluminous discovery in the future) and before the deadline to amend has expired.  Such concerns are ameliorated after substantial discovery has been completed and the case is primed to move on to the merits phase of the case.  *See, e.g.*, *Opal Labs, Inc. v. Sprinklr, Inc.*, 2019 WL 6528589, at *3 (D. Or. Dec. 4, 2019) (denying motion to compel).[6]  In this case, Defendant Amelco US filed an answer long ago on March 3, 2023, *see* Docket No. 1 at 2, discovery was conducted for many months, *see* Docket No. 20 at 2 (identifying Rule 26(f) conference from July 27, 2023), the deadline to amend expired a year ago, *see* Docket No. 58 at 2 (reflecting expired deadline to amend pleadings of November 3, 2023), and this motion practice was filed after the close of discovery, *see* Docket No. 91 at 5 (setting discovery cutoff of June 24, 2024).  The Court has not been presented with persuasive argument as to why this discovery dispute is properly before the Court at this juncture.[7]

Disputes as to the particularity of the trade secret description also arise in the context of dispositive motion practice.  *See, e.g.*, *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998) (quoting *MAI Sys. Corp. v. Peak Comp., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)).  Of course, the undersigned magistrate judge does not decide dispositive matters vis-à-vis discovery motion practice.  *See Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 512-13 (D. Nev.

---

[6] Courts also frown on threshold arguments to avoid discovery being raised late in the discovery period because providing such relief is contrary to the goals in Rule 1 of the Federal Rules of Civil Procedure.  *See, e.g.*, *JoshCo Tech., LLC v. MJJ&L Holdings, LLC*, 2020 WL 8254262, at (1-2 (D. Nev. Sept. 2, 2020) (denying motion to stay discovery filed in the twilight of the discovery period based on Rule 1 considerations).  While this motion to compel does not itself seek to avoid discovery, it is being filed in conjunction with Defendants raising the same argument elsewhere in an effort to avoid discovery.  *See* Docket No. 167 at 5 n.4; *see also* Section VIII.

[7] Defendants argue that this case has been pending since 2022 and that the trade secret information it seeks is "a threshold disclosure."  Docket No. 129 at 3, 4.  Emphasizing such points begs the question as to why the relief is properly sought in the current procedural posture.

2020).  "The procedures for challenging the merits of a trade secret claim prior to trial are set out in Rules 12 and 56 of the Federal Rules of Civil Procedure and are not properly challenged under discovery rules, including the requirement that the trade secret be identified with particularity." *Opal Labs*, 2019 WL 6528589, at *3 (citation omitted). !

In short, the Court has not been persuaded that it is appropriate to resolve the parties' arguments as to the sufficiency of the trade secret description through the instant motion practice at this juncture of the case.  Accordingly, Defendants' motion to compel interrogatory responses and trade secret disclosures (Docket Nos. 127, 129) is **DENIED**.[8]

## II.    Motion to Compel Responses to Requests for Admission (Docket Nos. 131, 133)

Defendant Amelco UK filed a motion to compel responses to requests for admission. Docket Nos. 131, 133.  Plaintiff filed a response in opposition.  Docket No. 192.  Amelco UK filed a reply.  Docket No. 213.

The instant dispute concerns a number of responses to requests for admission in which Plaintiff relies on boilerplate objections and indicates that it lacks sufficient information to admit or deny.[9]  Plaintiff has now abandoned its general objections.  Docket No. 192 at 14.  Hence, the instant motion rises and falls on Plaintiff's decision to "stand on its statement that [it] lacks the knowledge or information sufficient to admit or deny." *Id.*  Amelco UK argues that this objection is not properly stated.  *See, e.g.*, Docket No. 133 at 5; Docket No. 213 at 9.

Ample caselaw makes clear that, in addition to making a reasonable inquiry in responding to a request for admission, the responding party must "state fully those efforts" undertaken to obtain the needed information.  *Jones v. Zimmer*, 2014 WL 6772916, at *5 (D. Nev. Dec. 2, 2014) (quoting *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 194 (D. Nev. 2010)).  "A boilerplate statement to that effect is not sufficient." *Id.*  Although Plaintiff now states that it has "made a reasonable inquiry," *e.g.*, Docket No. 213-2 at 6 (supplemental response to Request No. 5), Plaintiff fails to

---

[8] The competing requests for an award of costs and fees are denied.  *See* Docket No. 129 at 19; Docket No. 155 at 22.

[9] After the motion was filed, Plaintiff served amended responses.  Docket No. 213-2. Following that supplementation, the dispute has narrowed to the responses to Requests for Admission 5-8, 20-23, 26, and 29-38.  *See* Docket No. 213 at 7-9.

identify "fully" the efforts actually made with respect to that inquiry.  Plaintiff's responses are inadequate.[10]

Accordingly, Amelco UK's motion to compel is **GRANTED**.  Plaintiff must further amend its responses to the requests for admission by February 3, 2025.[11]

## III. Motion to Compel Responses to Requests for Production (Docket Nos. 134, 136)

Defendant Amelco UK filed a motion to compel responses to requests for production. Docket Nos. 134, 136.  Plaintiff filed a response in opposition.  Docket No. 196.  Amelco UK filed a reply.  Docket No. 214.

With respect to the responses to Request Nos. 102-107, 112, 115, 118-120, the parties dispute whether the ESI production was made in accordance with Rule 34(b)(2)(E)(i), which requires that documents be produced "as they are kept in the usual course of business or must organize and label them to correspond with the categories in the discovery request."  Plaintiff argues that this provision applies only to hard document production, rather than ESI production. Docket No. 196 at 16.  The Court has already held to the contrary, *Kwasniewski v. Sanofi-Aventis U.S. LLC*, 2013 WL 3297182, at *1 (D. Nev. June 28, 2013) (citing *City of Colton v. Am. Promo. Events, Inc.*, 277 F.R.D. 578, 584 (C.D. Cal. 2011)), and has not been given sufficient reason to

---

[10] Plaintiff's response to the motion to compel relies largely on procedural arguments as to timeliness and the adequacy of conferral efforts.  *See* Docket No. 192 at 4-14.  Motions to compel must be filed without undue delay.  *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 360-61 (D. Nev. 2019) (identifying various factors).  Given all of the pertinent circumstances, the Court does not find the motion to compel to be untimely. *See, e.g.*, Docket No. 192 at 5 (recognizing that the motion was filed less than a month after the responses were received and by the outer deadline set by the Court).  Motions to compel must generally be filed after engaging in good faith conferral efforts.  *See, e.g.*, *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015) (identifying technical and substantive requirements).  Judges have discretion to deny motions filed without sufficient conferral efforts but are not required to do so.  *See, e.g.*, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 (D. Nev. 2019).  The Court is not persuaded that the motion to compel should be denied on this basis.  *See, e.g.*, Docket No. 192 at 13 (recognizing conference at which opposing counsel addressed the points it had earlier raised by letter and the arguments it briefed in the motion).  The Court is also unpersuaded by Plaintiff's contention that the requests for admission are improper.  *See* Docket No. 192 at 15-18; *but see* Docket No. 213 at 7-9.

[11] Plaintiff's request for fees and costs is denied.  *See* Docket No. 192 at 18-19.  The Court defers ruling on Amelco UK's request for fees and costs.  *See* Docket No. 133 at 12-13.  Any renewed request for fees and costs must be filed by February 10, 2025, must be tailored to the ruling made herein on this motion to compel, must include robust argument as to the entitlement to fees and costs, and must provide fulsome documentation as to the amount sought.

change course.  Moreover, Plaintiff makes no argument that its ESI was produced in the manner in which the information was kept in the usual course of business, so Plaintiff must organize and label its produced ESI to correspond with the categories in the discovery requests.

With respect to the responses to Request Nos. 123-24 and 127-28, the parties dispute whether information concerning the relevance of a PowerPoint created by Plaintiff's principal (Bill Stearns) about the contract dispute at the heart of this case.  *See* Docket No. 196 at 22-23.  While Plaintiff argues that this information is being sought to create a new counterclaim, Plaintiff has not provided reasonable grounds as to how party statements concerning the facts of this case are not also relevant to the claims and defenses already pled.  *See id.*  Relevance for discovery purposes remains broad in scope, *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019), and non-privileged party statements concerning the matter in dispute in the litigation are certainly within that scope.[12]

With respect to the responses to Request Nos. 99-101, 113-114, and 116-117, Plaintiff served responses arguing that the subject information is not within its control, that Defendants are either blocking access to the information or have destroyed it, and that Plaintiff tried to give the defense access to inspect the information.  *See* Docket No. 136 at 7-9.  Arguments about an opposing party's conduct is not a proper objection to a discovery request.  *See, e.g.*, *Spurbeck v. Wyndham Destinations, Inc.*, 2021 WL 1080738, at *2 (D. Nev. Mar. 18, 2021) (collecting cases). The proper response to these requests should be straightforward:  Plaintiff must conduct a reasonable search for responsive documents, and either produce non-privileged responsive documents or certify that such documents are not within its possession, custody, or control.[13]

---

[12] The gist of Plaintiff's argument is that this discovery is being sought solely to "drum up" the basis for a new counterclaim even though the deadline to amend has already expired.  Docket No. 196 at 22.  The argument is inconsistent:  if it is too late to bring a new counterclaim, then it is unclear why discovery would be sought solely for that purpose.  At any rate, Amelco UK argues that the discovery is relevant to the <u>existing</u> claims and defenses, and Plaintiff has failed to counter that contention in any meaningful fashion, so the "improper purpose" objection is lacking.

[13] Plaintiff's responsive brief is already at the page limit.  *Compare* Docket No. 196 *with* Local Rule Local Rule 7-3(b).  Plaintiff's attempt to incorporate by reference five additional pages of argument made elsewhere, *see* Docket No. 196 at 18 n. 47, is improper.

Arguments concerning the cause or significance of a lack of responsive documents are not properly addressed in discovery responses or in briefing a motion to compel.[14]

Accordingly, Amelco UK's motion to compel is **GRANTED**.  Plaintiff must provide the above information and documents by February 3, 2025, and the identified inspection must take place by February 18, 2025.[15]

## IV.    Motion to Compel Production of Subpoenaed Documents (Docket Nos. 137, 139)

Defendants filed a motion to compel production of subpoenaed documents.  Docket Nos. 137, 139.  Non-parties SB22 and Elm Tree Partners filed a response in opposition.  Docket No. 197.  Defendants filed a reply.  Docket No. 215.

The motion seeks to compel production of documents from these non-parties that are also in the possession of Plaintiff.  *See* Docket No. 139 at 9-10 (discussing Request Nos. 1 and 2).[16]  To wit, Request No. 1 seeks contracts between Plaintiff and these non-parties, and Request No. 2 seeks communications between Plaintiff and these non-parties, *see id.*  Defendants also served overlapping discovery requests on Plaintiff, receiving some responsive documents thereto.  *See* Docket No. 197 at 3, 5, 13-14.  The Court agrees with the non-parties that efforts to obtain these documents should have been directed at Plaintiff, with an appropriate motion to compel filed if necessary, rather than through issuance of these subpoenas.  *See, e.g., Ramirez v. Wynn Las Vegas,*

---

[14] Plaintiff indicates that it remains ready and willing to permit inspection.  Docket No. 196 at 19.  Defendants essentially ask the Court to preemptively judge whether the inspection offered is sufficient.  *See, e.g.,* Docket No. 136 at 10 ("it is not clear whether this [inspection offer] is even responsive to the requests").  The Court has not been persuaded that an inspection should be foregone based on such concerns.  Instead, it would seem plain that the parties should engage in the inspection and any deficiencies can be accounted for in later proceedings.  With respect to the logistics for the inspection, counsel need to resolve those issues cooperatively so that the inspection can take place.

[15] The competing requests for an award of costs and fees are denied.  *See* Docket No. 136 at 13-14; Docket No. 196 at 23-24.

[16] Defendants argue that all objections were waived.  Docket No. 139 at 5.  The Court agrees with SB22 and Elm Tree Partners that the objections were not waived in the circumstances of this case.  *See* Docket No. 197 at 7-10; *see also, e.g., WideVoice Comms., Inc. v. Quest Comms. Co.*, 2012 WL 1439071, at *3 (D. Nev. Apr. 26, 2012).

*LLC*, 2020 WL 10731761, at *3 (D. Nev. Jan. 31, 2020) (citing *McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017)); Fed. R. Civ. P. 26(b)(2)(C)(i).[17]

With respect to the remaining subpoena categories, the motion simply cuts-and-pastes the requests and responses, and then (without explanation) incorporates by reference the arguments made earlier with respect to Request No. 2. *See* Docket No. 139 at 11-18. As discussed above, the Court is not persuaded by Defendants' position with respect to Request No. 2. To the extent Defendants possess additional arguments with respect to these other subpoena categories, the Court declines to address issues that are raised without meaningful argument. *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013). Discovery-related motion practice is not exempt from this basic proposition. *Reno v. W. Cab Co.*, 2019 WL 8061214, at *2 (D. Nev. Sept. 23, 2019). "Parties may not merely identify an objection or response in seeking judicial intervention." *Oliva v. Cox Comms. Las Vegas, Inc.*, 2018 WL 6171780, at *4 (D. Nev. Nov. 26, 2018). Even when the responding party bears the burden of persuasion, the movant bears an initial burden of coherently identifying the issues in dispute and providing a position in meaningful fashion on each issue in dispute, *see, e.g.*, *Lux v. Buchanan*, 2024 WL 1598805, at *1 (D. Nev. Apr. 12, 2024).[18] The motion having presented no meaningful argument on these other categories, the Court declines to address them.

Accordingly, Defendants' motion to compel is **DENIED**.[19]

---

[17] Defendants state that the undersigned has elsewhere rejected this proposition. *See* Docket No. 215 at 8. Defendants misread the undersigned's prior decision. In *Linksmart Wireless Technology, LLC v. Caesars Entertainment Corporation*, the Court was faced with the unusual scenario in which a party was attempting to avoid discovery on the ground that it was also sought from a nonparty. 2020 WL 4431498, at *3. Hence, *Linksmart* involved "the opposite of the situation" generally addressed in the case law. *Id.* For a variety of reasons, including that "party discovery obligations differ from non-party discovery obligations," the Court compelled the party to produce the responsive documents. *See id.* at *3-4.

[18] The Court also does not address new arguments raised for the first time in reply. *Brand v. Kijakazi*, 575 F. Supp. 3d 1265, 1273 (D. Nev. 2021).

[19] SB22's and Elm Tree Partners' request for sanctions pursuant to Rule 45(d)(1) of the Federal Rules of Civil Procedure is denied. *See* Docket No. 197 at 20.

## V.    Motion for Protective Order (Docket No. 141)

Non-party John Thompson filed a motion for protective order.   Docket No. 141.  Defendants filed a response in opposition.   Docket Nos. 193, 194.   Non-party Thompson filed a reply.   Docket No. 210.   Discovery is closed.   Docket No. 91.   The deadline to file discovery motions is also closed.   Docket No. 130.  Defendants did not obtain Thompson's deposition during the discovery period and did not bring a timely motion to compel that deposition.   Hence, there is no deposition from which to be protected.[20]   Accordingly, the motion for protective order is **DENIED** as moot.[21]

## VI.    Motion to Compel Responses to Requests for Production (Docket Nos. 142, 144)

Defendant Amelco UK filed a motion to compel responses to requests for production.  Docket Nos. 142, 144.  Plaintiff filed a response in opposition.  Docket No. 198.  Amelco UK filed a reply.  Docket No. 216.

As to Request Nos. 1-7 and 10-11, the parties dispute whether the production of ESI must be organized as required by Rule 34(b)(2)(E)(i).  *See, e.g.*, Docket No. 198 at 17-21.  As discussed above in Section III, the Court agrees with Amelco UK that Rule 34(b)(2)(E)(i) applies to ESI production, *see, e.g.*, *Kwasniewski*, 2013 WL 3297182, at *1 (citing *City of Colton*, 277 F.R.D. at 584).

As to Request Nos. 33-34 and 36-37, the parties dispute whether Plaintiff's casino contracts are relevant.  *See, e.g.*, Docket No. 198 at 21-22.  Relevance for discovery purposes remains broad in scope.  *V5 Technologies*, 334 F.R.D. at 309.  The Court agrees with Amelco UK that the requests seek information relevant to the claims in the case, including specific allegations in the second amended complaint regarding Plaintiff's alleged efforts regarding the kiosk project, *see* Docket

---

[20] Defendants make an attenuated argument that resolution of a different discovery motion (Docket Nos. 137, 139) may result in the production of documents that may reveal a need to depose Thompson such that Defendants may file a motion to reopen discovery to take this deposition that the Court may grant.  Docket No. 193 at 4.  The Court has denied that other discovery motion above.  *See* Section IV.  Even if that were not the case, the Court would not entertain this motion practice based on multi-tiered speculation that somehow a live dispute may exist in the future if numerous contingencies fall into place.

[21] Defendants' request for fees and costs is denied.  Docket No. 193 at 7.

No. 70 at ¶¶ 55, 56, and the claims for unjust enrichment and alleged damages, *see, e.g.*, *id.* at ¶¶ 190-97.

Accordingly, Amelco UK's motion to compel is **GRANTED**.  Plaintiff must provide the above information and documents by February 3, 2025.[22]

**VII.    Motion for Inherent Authority Sanctions (Docket Nos. 145, 237, 238)**

Plaintiff filed a motion for inherent authority sanctions.  Docket Nos. 145, 237, 238.[23]  Defendants filed a response in opposition.  Docket Nos. 199, 201.  Plaintiff filed a reply.  Docket No. 212.

A federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  The Supreme Court has cautioned, however, that a court must "exercise caution in invoking its inherent power, and . . . must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees."  *Id.*  "Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."  *Id.*  If, "in the informed discretion of the court, neither the statute nor the Rules are up to task, the court may safely rely on its inherent power."  *Id.*

Given the myriad remedies available by rule for perceived discovery violations, courts are rightly reluctant to resort to their inherent power to address alleged discovery abuses.  *See, e.g.*, *Leverty & Assocs. Law Chtd. v. Exley*, 2018 WL 6728415, at *14 (D. Nev. Nov. 5, 2018); *Yip v. Quality Fin., Inc.*, 2012 WL 5199714, at *3 (D. Nev. Oct. 22, 2012); *see also, e.g.*, *Flynn v. Nev.*, 345 F.R.D. 338, 342 n.3 (D. Nev. 2024) (declining to rely on inherent authority given existing federal rule on the same subject).  Indeed, the Ninth Circuit has explained recently that at least some discovery rule provisions are expressly designed to *foreclose reliance on inherent authority*.  *Gregory v. State of Montana*, 118 F.4th 1069, 1079 (9th Cir. 2024) (holding that district court erred

---

[22] The competing requests for an award of costs and fees are denied.  *See* Docket No. 144 at 11; Docket No. 198 at 22.

[23] The initially-filed motion and exhibits were stricken, Docket No. 233, and then refiled.

as a matter of law by relying on its inherent authority rather than applying Rule 37(e)). The Court is also disinclined to incentivize a strategy of stockpiling perceived discovery violations to lay the groundwork for a sanctions motion, rather than taking prompt action to actually obtain discovery needed for the case to be resolved on its merits. *Cf. Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 243 (D. Nev. 2017).

Plaintiff's motion is predicated on its cataloguing alleged discovery violations, including insufficient interrogatory responses, a failure to adequately investigate interrogatory responses, withholding of responsive documents, and untimely discovery responses. *See, e.g.*, Docket No. 237 at 4-19.[24] These perceived violations date back many months, some going back to 2023. *See, e.g.*, *id.* at 4. Existing provisions of the Federal Rules already cover this ground and provide for potential relief. *See, e.g.*, Fed. R. Civ. P. 26(g) (requiring certification of discovery responses based on a reasonable inquiry and providing recourse for violations of that requirement); Fed. R. Civ. P. 37(a) (providing procedures for bringing motions to compel). The Court has been given no persuasive explanation as to why the rules are not "up to the task" of addressing such accusations, *Chambers*, 501 U.S. at 50, so the Court declines to invoke its inherent authority.

Accordingly, Plaintiff's motion for inherent authority sanctions is **DENIED**.

## VIII.    Motion to Compel Document Production (Docket Nos. 146, 239, 240)

Plaintiff filed a motion to compel document production. Docket Nos. 146, 239, 240.[25] Defendants filed a response in opposition. Docket Nos. 178, 180. Plaintiff filed a reply. Docket No. 209.

The Court begins with Defendants' overarching argument that they cannot be required to provide their own sensitive information until Plaintiff adequately identifies its trade secrets that were allegedly misappropriated. *See* Docket No. 180 at 4-7. As discussed above, *see* Section I, courts have entertained similar arguments in the context of defendants seeking to avoid discovery

---

[24] Defendants oppose the motion on multiple fronts, including as to whether they were engaged in bad-faith discovery misconduct. Docket No. 199 at 3-23. In light of the ruling herein, the Court does not express an opinion regarding Plaintiff's characterization of Defendants' conduct.

[25] The initially-filed motion and exhibits were stricken, Docket No. 233, and then refiled.

into their sensitive information.  As Plaintiff notes here, however, the procedural posture of this case is different.  Docket No. 209 at 4.  The discovery period is closed and the Court is simply resolving lingering discovery motions, so much of the policy impetus behind the case law is no longer implicated in this case.  *See Opal Labs*, 2019 WL 6528589, at *3.  In addition, Defendants did not raise this objection in responding to the discovery requests at issue, Docket No. 239 at 3-6,[26] and did not make this argument when a motion to compel was filed with respect to this discovery earlier in the case, *see* Docket No. 85 (responding to motion to compel regarding Request Nos. 29, 36).[27]  The ship has clearly sailed on this objection.  *See, e.g.*, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Plaintiff seeks to compel unredacted contracts between Defendants and their customers, and documents sufficient to show United States sales.  Docket No. 239 at 3-5 (Request Nos. 29, 36).  Plaintiff also seeks to compel "knowledge bank" and Hard Rock documents.  *Id.* at 5-6 (Request No. 31).  Other than the trade secret identification issue addressed above, Defendants argue primarily that the scope of the requests is overbroad.  *See* Docket No. 180 at 7-10.  That argument is persuasive.[28]  As such, this aspect of the motion to compel will be granted in part and

---

[26] Defense counsel ventures into potentially perilous waters in representing that this objection had in fact been raised.  Docket No. 180 at 7 ("AUSA and AUK additionally objected on the basis for which they now countermove for a protective order, i.e., that ISI is trying to engage in an improper fishing expedition of AUSA's and AUK's proprietary information without first identifying its own proprietary information with any particularity").  The Court has located in the cited objections no such statement.

[27] The prior motion practice was denied without prejudice so the parties could engage in further conferral efforts.  Docket No. 122.  The conferral process is meant to eliminate or *narrow* the scope of a discovery dispute, *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993), not to enable the formulation of new arguments to oppose the discovery at issue.

[28] The Court notes that the briefing on both sides sometimes conflates an undue burden objection with an overbreadth objection.  The ruling herein is that the requests are impermissible in scope in that they sweep up some discoverable information and some non-discoverable information.  The Court also notes that Plaintiff argues that this objection was not preserved, *see, e.g.*, Docket No. 209 at 9, but the Court is not persuaded by Plaintiff's position given the fulsome argument presented in the briefing, *cf. Gersh v. Anglin*, 2019 WL 265800, *4 (D. Mont. Jan. 18, 2019) ("Except to the extent he provides supporting argument in his response brief, these boilerplate objections are waived").

denied in part.[29]  The Court declines to itself narrow the requests to an appropriate scope, however, as that should be addressed and resolved by counsel in the first instance.

Plaintiff seeks to compel production of all non-privileged documents identified through the search terms the parties agreed to run.  *See* Docket No. 239 at 10-11; Docket No. 209 at 10-12.  Defendants respond that they did not agree to produce all captured documents, but rather only those documents that were relevant.  *See* Docket No. 180 at 10-12.  Defendants also note that Plaintiff has not identified any request for production that remains unsatisfied.  *See id.* at 10-11.  The Court agrees with Defendants.  Plaintiff has not substantiated its claim that there was an agreement to produce all captured documents.  *See id.* at 10-12.  The Court is also not persuaded that an agreement to use certain search terms to locate a universe of ESI means by implication that all captured documents must be produced.  Courts do not compel production of documents that are not responsive to a propounded request.  *See, e.g.*, *Barnum v. Equifax Info. Servs., LLC*, 2018 WL 1245492, at *3 (D. Nev. Mar. 9, 2018).   Hence, a party seeking production of all captured documents would need—as a threshold matter—to propound a corresponding request for production for all captured documents.  *Cf. D.S. v. Clark Cnty. Sch. Dist.*, 2023 WL 3584256, at *1 (D. Nev. May 22, 2023).[30]

Accordingly, Plaintiff's motion to compel document production is **GRANTED** in part and **DENIED** in part.  Counsel must immediately confer to narrow the scope of these requests, which process must be completed by January 27, 2025.  Documents responsive to the narrowed requests must be produced by February 10, 2025.[31]

---

[29] In light of the existence of a blanket protective order, the Court is not persuaded that any confidentiality concerns warrant denial of this discovery.

[30] Of course, the opposing party would be able to lodge objections, but actually propounding a discovery request is a necessary first step.

[31] The competing requests for an award of costs and fees are denied.  *See* Docket No. 239 at 12; Docket No. 180 at 13.

1 **IX.    Motion to Compel Interrogatory Responses (Docket Nos. 147, 241, 242)**

2      Plaintiff filed a motion to compel interrogatory responses. Docket No. 147, 241, 242.[32]

3 Defendants filed a response. Docket Nos. 184, 186. Plaintiff filed a reply. Docket No. 208.

4      This motion practice addresses Defendants' responses to interrogatories and the issues

5 largely track those addressed above in Section VIII. *See, e.g.*, Docket No. 241 at 1-2. The Court

6 is not persuaded by Defendants' argument that they cannot be required to provide their own

7 sensitive information until Plaintiff adequately identifies its trade secrets that were allegedly

8 misappropriated. The Court agrees with Defendants as to the overly broad nature of the

9 interrogatories. *See* Docket No. 186 at 7.[33]

10      Accordingly, Plaintiff's motion to compel interrogatory responses is **GRANTED** in part

11 and **DENIED** in part. Counsel must immediately confer to narrow the scope of these

12 interrogatories, which process must be completed by January 27, 2025. Supplemental responses

13 to the narrowed interrogatories must be produced by February 10, 2025.[34]

14 **X.    Motion to Compel Document Production and to Reopen Deposition (Docket Nos. 148,**

15 **243)**

16      Plaintiff filed a motion to compel document production and to reopen deposition. Docket

17 Nos. 148, 243.[35] Defendants filed a response in opposition. Docket Nos. 189, 191. Plaintiff filed

18 a reply. Docket No. 207.

19      This motion arises out of deposition testimony that information was "passed back" to the

20 deponent from counsel, *see, e.g.*, Docket No. 243 at 5, from which Plaintiff infers a plot to use the

21

22      [32] The initially-filed motion and exhibits were stricken, Docket No. 233, and then refiled.

23      [33] The Court agrees with Plaintiff that the other objections lack merit. *See* Docket No. 208

24 at 3-6 (addressing objections of relevance, assuming/mischaracterizing facts, ambiguity, and undue burden).

25      [34] The motion appears to seek sanctions, though it also appears to indicate that this motion

26 was filed in support of a different motion for inherent authority sanctions. *See* Docket No. 241 at 11. The Court has separately addressed the referenced motion for inherent authority sanctions. To

27 the extent Plaintiff seeks sanctions specific to this motion to compel, that request is denied. Defendants' competing request for an award of fees is also denied. Docket No. 186 at 12.

28      [35] The initially-filed motion and exhibits were stricken, Docket No. 233, and then refiled.

attorney-client relationship to shield important information from discovery, *see, e.g.*, Docket No. 207 at 12 (accusing opposing counsel of "launder[ing]" information from communications with nonparties). Plaintiff argues that unproduced communications must be compelled as responsive to two requests for production. *See, e.g.*, Docket No. 243 at 12-17. Plaintiff also seeks production by invoking Rule 612 of the Federal Rules of Evidence. *See, e.g.*, *id.* at 6-12.

"A party cannot be compelled to produce documents that it insists do not exist." *Lux*, 2024 WL 1598805, at *2 (quoting *Acosta v. Wellfleet Comm's, LLC*, 2018 WL 664779, at *7 (D. Nev. Feb. 1, 2018)). Among other arguments, Defendants proffer that there are no responsive documents to be produced. The responsive brief represents that "Walton and Wynne have confirmed that no such communications exist," Docket No. 189 at 10, and a declaration from counsel is attached that her firm does not have the communications alluded to by Plaintiff, Docket No. 189-5 at ¶ 7. Although Plaintiff argues that the record is inconsistent on this issue, *see, e.g.*, Docket No. 207 at 7-9, the Court is not persuaded that the record suffices to issue an order (enforceable as a matter of contempt) to produce documents given the competing attestation that responsive documents do not exist.[36] The Court notes, however, that the proffer of a lack of documents is not sufficiently presented. First, it does not appear that Defendants responded to the identified requests for production by asserting that there are no responsive documents to produce. *Compare* Docket No. 189 at 10 *with* Docket No. 243 at 13-14. Such an assertion must be certified in a discovery response. *See* Fed. R. Civ. P. 26(g). Second, the declaration from counsel is somewhat bare, indicating that, "[u]pon research, I am unaware of and was unable to locate documents responsive to what [Plaintiff] contends was testified to in the deposition." *Id.* The Court will require a further declaration providing more detail as to the search made by counsel for responsive documents. *See V5 Technologies*, 332 F.R.D. at 367.

---

[36] Accusations of missing documents are made with unfortunate regularity. *Cf. Kohli v. Dayal*, 2023 WL 11909037, at *2 (D. Nev. July 28, 2023). The record here does not suffice for an order compelling the production of documents that the opposing party represents do not exist.

Accordingly, Plaintiff's motion to compel document production and to reopen deposition is **DENIED**, except that the referenced supplemental discovery responses and declaration must be provided by January 27, 2025.

**XI.    Motion to Exclude Evidence (Docket Nos. 149, 244)**

Plaintiff filed a motion to exclude evidence.  Docket Nos. 149, 244.[37]  Defendants filed a response in opposition.  Docket Nos. 175, 177.  Plaintiff filed a reply.  Docket No. 211.

In the event a party learns that its disclosures or discovery responses are incomplete or inaccurate, it must timely supplement them.  Fed. R. Civ. P. 26(e)(1).  A formal supplement is unnecessary with respect to information that has "otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A); *see also V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 618-19 (D. Nev. 2020).  The opposing party may move to exclude information that was not properly disclosed.  Fed. R. Civ. P. 37(c)(1).  The party seeking exclusion bears the initial burden of establishing a violation of the governing rules.  *Silvagni*, 320 F.R.D. at 241-42 (citing *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011)).  If a disclosure violation is identified, the disclosing party may avoid exclusionary sanctions by establishing that the violation was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  Even when substantial justification and harmlessness are not shown, exclusionary sanctions are not automatic and are generally limited to extreme situations, courts retain substantial discretion, and courts generally focus on lesser sanctions that may prevent prejudice to the opposing party.  *See Silvagni*, 320 F.R.D. at 243.  As has been explained elsewhere:

> Courts will ensure that a level playing field exists on which sufficient notice is provided to prepare for trial, but parties and attorneys should keep in mind that courts look with disfavor on attempts to rely on technical violations of the rules in an attempt to gain unwarranted tactical advantages.  Especially when a disclosure is made within or near the discovery cutoff, litigants should not automatically resort to a motion for exclusion sanctions; the initial impulse of counsel should be to confer on a compromise to eliminate any potential prejudice arising from the timing of that disclosure.

*V5 Technologies*, 334 F.R.D. at 618 n.1 (citations omitted).

---

[37] The initially-filed motion and exhibits were stricken, Docket No. 233, and then refiled.

With respect to the independent-development theory and the disclosure of Farago, the Court does not find that exclusionary sanctions are warranted. As Plaintiff's own motion makes clear, it has known of the independent-development theory for more than three years. Docket No. 244 at 12. Indeed, Plaintiff itself drafted a Rule 30(b)(6) deposition topic specifically on that issue. Docket No. 175-14 at ¶ 13(f). With respect to Farago, it is undisputed that he was not formally disclosed until the end of the discovery period. *See* Docket No. 244-5. It is a close call as to whether his identity and his significance to the case was sufficiently known to Plaintiff through other discovery. *See, e.g.*, Docket No. 177 at 16-17. Even assuming Farago was not sufficiently known and that Defendants' formal disclosure was untimely, however, the Court would not impose sanctions based on its consideration of the pertinent factors. *See Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *Silvagni*, 320 F.R.D. at 242). For example, the only prejudice identified by Plaintiff is the inability to plumb Farago's personal knowledge about his work, *see* Docket No. 211 at 10; *see also* Docket No. 244 at 15, but that concern can be remedied by allowing Farago's deposition, *see Silvagni*, 320 F.R.D. at 243 (quoting *Jones v. Wal-Mart Stores, Inc.*, 2016 WL 1248707, at *7 (D. Nev. Mar. 28, 2016)). Given all of the considerations and the desire to mitigate any possible prejudice to Plaintiff, the Court will deny the request for exclusionary sanctions, but will allow Plaintiff to depose Farago.[38]

With respect to the kiosks, the Court also does not find that the sanctions sought are warranted.[39] The usual sanction envisioned by Rule 37(c)(1) is for exclusion of late or undisclosed information, evidence, or witnesses. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use *that* information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

---

[38] Plaintiff seems to argue in reply that no relief may be considered other than exclusion. *See* Docket No. 211 at 11. Not so. The responsive brief identifies the potential for alternative sanctions and relies on case law that exclusionary sanctions are generally not appropriate for disclosures at or near the discovery cutoff that can be cured by allowing related discovery to be taken. *See* Docket No. 177 at 21 (citing, *inter alia*, *Jones*, 2016 WL 1248707, at *7).

[39] In light of the ruling herein, the Court need not weigh in on the issue of whether an informal request or promise may form the basis for sanctions. The Court also notes that the briefing fails to adequately address the legal issue. *See, e.g.*, *M.M. v. Yuma Cnty.*, 2011 WL 5445336, at *1 (D. Ariz. Nov. 10, 2011) (identifying contrary authority).

failure was substantially justified or is harmless" (emphasis added)).  Plaintiff's motion is predicated on that rule.  *See, e.g.*, Docket No. 244 at 10.  Plaintiff's motion does not ask for an order that Defendants be precluded from presenting the kiosks as evidence, however; Plaintiff seeks an order that Defendants be precluded from presenting *any* evidence in support of three different contentions that would resolve by default core factual issues in the case.  *See, e.g.*, Docket No. 244 at 22 (seeking an order preventing Defendants from presenting "any evidence" that they did not receive two kiosks shipped by ISI to AUK at its offices in Leeds and London and did not receive ISI's software, that they did not access the hardware and software making up the two shipped kiosks, and that Amelco did not use the hardware and software to develop a retail sports-betting solution for use in the United States).  While such relief is theoretically available pursuant to Rule 37(c)(1)(C), which incorporates the sanctions in Rule 37(b)(2)(A)(i)-(v),[40] the motion provides no reference to those provisions and does not provide meaningful explanation of the governing standards.  The Court declines to weigh in on this severe sanction when the motion fails to identify law allowing for it and to explain how the pertinent standards are met.  *Cf. Lall v. Corner Inv. Co.*, 2022 WL 22883685, at *1 (D. Nev. Jan. 12, 2022).[41]

Accordingly, Plaintiff's motion to exclude evidence (Docket Nos. 149, 244) is **DENIED**, except that Plaintiff may depose Farago by February 10, 2025.[42]

---

[40] Pursuant to Rule 37(b)(2)(A)(ii), the Court may issue a sanction "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

[41] Unlike the deposition of Farago, the Court declines to consider an order for production of the kiosks for at least two reasons.  First, the kiosks were not first disclosed at the end of the discovery period.  Second and relatedly, although Plaintiff's motion relies in part on the briefing in its earlier motion to compel that was denied without prejudice, *see, e.g.*, Docket No. 211 at 3 (relying on Defendants' brief at Docket No. 101, which responded to motion to compel at Docket No. 96); *see also* Docket No. 122 (denying without prejudice the motion to compel at Docket No. 96, subject to further conferral efforts and prompt renewing of motion to compel), the motion fails to adequately explain why Plaintiff did not refile that motion to compel to protect its rights if, indeed, it believed Defendants were obligated to provide the kiosks, *cf. Silvagni*, 320 F.R.D. at 233 n.7 (citing *Roe v. Nev.*, 621 F. Supp. 2d 1039, 1060 (D. Nev. 2007)).

[42] Defendants' passing request for sanctions is denied.  *See* Docket No. 177 at 21.

**XII.    Motion to Issue Letter of Request for Judicial Assistance and for Sanctions (Docket Nos. 150, 245)**

Plaintiff filed a motion to issue letter of request for judicial assistance.  Docket Nos. 150, 245.[43]  Defendants filed a response in opposition.  Docket No. 183.  Plaintiff filed a reply.  Docket No. 206.

The Ninth Circuit has "repeatedly and emphatically addressed the importance of scheduling orders as tools for district courts to manage their heavy caseloads." *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 641 (D. Nev. 2021) (collecting cases).  As articulated in one of those cases:

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [the] case.  Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal citation omitted).  Hence, "[t]he use of orders establishing a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006).  It is also well settled that, to comply with the scheduling order, discovery must be sought in advance of the discovery cutoff such that it may be obtained prior to the discovery cutoff. *Wyles v. Sussman*, 445 F. Supp. 3d 751, 755 (C.D. Cal. 2020); *see also Adobe Sys. Inc. v. Christenson*, 2011 WL 1322529, at *2 (D. Nev. Apr. 5, 2011) (quoting *Northern Indiana Pub. Serv. Co. v. Colo. Westmoreland, Inc.*, 112 F.R.D. 423, 424 (N.D. Ind. 1986)).

---

[43] The initially-filed motion and exhibits were stricken, Docket No. 233, and then refiled.

The instant motion seeks to <u>initiate</u>[44] the process for obtaining depositions abroad, *see* Docket No. 245, but the discovery cutoff expired a month before the motion was filed, Docket No. 91 at 5 (setting discovery cutoff of June 24, 2024). The request is untimely. Moreover, Plaintiff's attempts to avoid denial on that basis are not persuasive. To be clear, Plaintiff represents that it has known of the need to obtain these depositions since at least November 2023. *E.g.*, Docket No. 245 at 2. Plaintiff explains the months of delay by pointing to alleged obstruction by defense counsel. *See, e.g.*, Docket No. 206 at 10. Making such accusations, however, does not obviate Plaintiff's own duty to seek judicial relief in prompt fashion. *See, e.g.*, *Wells v. Sears Roebuck and Co.,* 203 F.R.D. 240, 241 (S. D. Miss. 2001) (explaining that a party seeking discovery fails to act promptly at its own peril and should not expect an extension of discovery the discovery cutoff by pointing to the conduct of the opposing party).

Plaintiff also points to the fact that it had initially filed its request on March 22, 2024, Docket No. 95, but the motion was denied without prejudice on May 27, 2024, Docket No. 122.[45] The fact that the parties were engaged in further conferral efforts did not negate the requirement to seek judicial relief in a diligent manner. *See, e.g.*, *Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 355 (D. Nev. 2019) (collecting cases). Such diligence is lacking here. The Court specifically ordered that renewed "conferral efforts must take place by ***June 12, 2024***, and any renewed motion practice must be filed ***promptly*** thereafter." Docket No. 122 at 3 (emphasis added). The Court issued that order against a backdrop of prior findings of a lack of diligence, *see, e.g.*, Docket No. 76 at 1, and warnings that "the parties must diligently conduct discovery" moving forward because "**NO FURTHER EXTENSIONS WILL BE GRANTED**," Docket No. 91 at 4, 5 (emphasis in original). More than a week after the conferral deadline set by the Court, on June 20, 2024,

---

[44] As to discovery that was timely sought before the cutoff, the outer deadline for filing a motion to compel is generally the date set for dispositive motions, or July 16, 2024, in this case. *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999). The fact that a motion to compel may be deemed timely when filed after the discovery cutoff does not mean that discovery need not be propounded in timely fashion before the discovery cutoff. *E.g.*, *Adobe Systems*, 2011 WL 1322529, at *3-4.

[45] The parties briefed the motion itself and ancillary sealing issues, which was not completed until May 24, 2024. *See* Docket Nos. 95, 97, 103, 104, 105, 110, 115, 118.

Plaintiff's counsel was indicating that the motion would be filed "early next week, either opposed or not." Docket No. 245-6 at 2. And, yet, Plaintiff's counsel continued to confer on these depositions through at least July 11, 2024 (*i.e.*, weeks after the discovery cutoff and a month after the deadline set by the Court for conferring), Docket No. 245-9 at 4-5; *see also* Docket No. 206 at 10,[46] and did not file the motion for these depositions until July 16, 2024, Docket No. 150 (notice of electronic filing). In short, the Court agrees with Defendants that this request is untimely.[47]

Accordingly, Plaintiff's motion to issue letter of request for judicial assistance is **DENIED**.[48]

**XIII.  Conclusion**

For the reasons discussed above, the Court orders as follows:

- Defendants' motion to compel interrogatory responses and trade secret disclosures (Docket Nos. 127, 129) is **DENIED**.

- Defendant Amelco UK's motion to compel (Docket Nos. 131, 133) is **GRANTED**. Plaintiff must amend its responses to the requests for admission by February 3, 2025.

- Defendant Amelco UK's motion to compel (Docket Nos. 134, 136) is **GRANTED**. Plaintiff must provide the subject information and documents by February 3, 2025, and the identified inspection must take place by February 18, 2025.

- Defendants' motion to compel production of subpoenaed documents (Docket Nos. 137, 139) is **DENIED**.

---

[46] If in fact opposing counsel was thwarting or unfairly delaying conferral efforts, that scenario does not prevent the movant from seeking judicial relief in prompt fashion. *See* Local Rule 26-6(c) (requiring a "good-faith *effort* to meet and confer" prior to bringing a discovery motion (emphasis added)).

[47] The Court recognizes Plaintiff's assertions that these depositions are important to its case. *See, e.g.*, Docket No. 245 at 11. The importance of discovery does not save the day for a party who failed to obtain it by exercising diligence in accordance with the case management deadlines. *Cornwell*, 439 F.3d at 1027 (holding that district court acted "well within its sound discretion" in denying request to reopen the discovery cutoff for lack of diligence, "even in the face of requested supplemental discovery that might have revealed highly probative evidence"); *see also Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 399 (N.D. Tex. 2006) ("Although [the movant] argued that it had a strong need for the documents, which appear relevant, this factor has not generally been considered by courts, and the alleged importance of the documents appears inconsistent with the delay in seeking the documents").

[48] Plaintiff's request for sanctions is denied. *See* Docket No. 245 at 21-23.

- Non-party John Thompson's motion for protective order (Docket No. 141) is **DENIED** as moot.

- Defendant Amelco UK's motion to compel (Docket Nos. 142, 144) is **GRANTED**. Plaintiff must provide the identified information and documents by February 3, 2025.

- Plaintiff's motion for inherent authority sanctions (Docket Nos. 145, 237, 238) is **DENIED**.

- Plaintiff's motion to compel document production (Docket Nos. 146, 239, 240) is **GRANTED** in part and **DENIED** in part. Counsel must immediately confer to narrow the scope of these requests, which process must be completed by January 27, 2025. Documents responsive to the narrowed requests must be produced by February 10, 2025.

- Plaintiff's motion to compel interrogatory responses (Docket Nos. 147, 241, 242) is **GRANTED** in part and **DENIED** in part. Counsel must immediately confer to narrow the scope of these interrogatories, which process must be completed by January 27, 2025. Supplemental responses to the narrowed interrogatories must be produced by February 10, 2025.

- Plaintiff's motion to compel document production and to reopen deposition (Docket Nos. 148, 243) is **DENIED**, except that the referenced supplemental discovery responses and declaration must be provided by January 27, 2025.

- Plaintiff's motion to exclude evidence (Docket Nos. 149, 244) is **DENIED**, except that Plaintiff may depose Farago by February 10, 2025.

- Plaintiff's motion to issue letter of request for judicial assistance (Docket Nos. 150, 245) is **DENIED**.

IT IS SO ORDERED.

Dated: January 14, 2025

_____
Nancy J. Koppe
United States Magistrate Judge